FÉLIX LAUREANO MALDONADO, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE BAYAMÓN, HON. AUGUSTO PALMER, JUEZ, demandado; EL PUEBLO DE PUERTO RICO, interventor.

*Número:* C-65-7        *Resuelto:* 18 de mayo de 1965

382

William Fred Santiago, William Morales Torres y Edwin R.
Bonilla Vélez, abogados del peticionario; J. B. Fernández
Badillo, Procurador General, y Peter Ortiz, Procurador Ge-
neral Auxiliar, abogados de El Pueblo.

Sala integrada por el Juez Presidente Interino Señor Pérez
Pimentel y los Jueces Asociados Señores Blanco Lugo y
Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del
Tribunal.

Ante el Tribunal Superior, Sala de Bayamón, se formuló acusación contra Félix Laureano Maldonado, por una infracción a la Ley de Bolita—Sec. 4ta. de la Ley Núm. 220, de 15 de mayo de 1948 (33 L.P.R.A. sec. 1250).[1] La acusación es de fecha 7 de enero de 1964.

Se le imputó que: ". . . Allá en o por el día 22 de diciembre de 1963 . . . ilegal, voluntaria y criminalmente tenía en su negocio y a su disposición listas de papel conteniendo números de tres cifras seguidos de guión y números a la derecha, 1 sobre conteniendo números de tres cifras seguidos de guión y números a la derecha entre ellos 110-100, 500-50; . . . ."

La declaración jurada de 21 de diciembre de 1963, que sirvió de base para la expedición de una orden de allanamiento del negocio del peticionario—orden que fue diligenciada el día 22 de diciembre de 1963 ocupándose "siete pedazos de papel con números de tres cifras seguidas de guión y unidad a la derecha, un sobre blanco con los números 110-100 y 500-50 apuntados, un papel con una nota dirigida a Félix, una cajita de madera conteniendo $7.50 y una lista de números de Bolita"—lee en lo pertinente así:

" . . . Que soy miembro de la Policía de Puerto Rico y presto servicios como agente encubierto en la División de Control de Vicios en el Area Norte.

---

[1] La Sec. 4ta. de la Ley Núm. 220 dispone en su parte pertinente lo siguiente:

"Toda persona que fuere sorprendida portando o conduciendo o que tuviere en su poder en cualquier concepto cualquier papeleta, billete, *ticket*, libreta, lista de números o letras, boletos o implementos que pudieren usarse para los juegos ilegales de la 'Bolita', 'Boli-Pool', combinaciones relacionadas con los 'Pools' o bancas de los hipódromos de Puerto Rico y loterías clandestinas, y toda persona que poseyere, vendiere, o en cualquier forma transportare éstos o cualesquiera otros análogos que se pudieren utilizar o usar en dichos juegos ilícitos, *o* conectados con la práctica de los mismos, incurrirá en delito público . . ."

(Hemos subrayado la letra *o* para llamar la atención al hecho de que por interpretación de este Tribunal en *Pueblo* v. *Mantilla,* 71 D.P.R. 36, 42 (1950), se permite la sustitución de esta conjunción *o* por la conjunción "y".)

"Que me consta de propio conocimiento porque lo he visto e investigado de que el individuo Félix Laureano Maldonado, residente en Vega Alta, P.R., quien tiene un negocio cafetín en la Calle Laureano Vega de Vega Alta, P.R., se está dedicando a recolectar y a bregar en dicho cafetín con material del juego ilegal conocido por Bolita y/o Boli-Pool . . . . Que allá para el día 20 de diciembre de 1963 en horas de la tarde en ocasión que me encontraba en el cafetín del referido Félix Laureano Maldonado cuando en eso llegó allí un individuo a quien no conozco de nombre y le entregó a Félix Laureano Maldonado un pedazo de papel color blanco a la vez que le dijo, 'Ahí están los números que he vendido, te traigo los chavos mañana'. Que entonces Félix Laureano abrió el papel y se puso a revisar los números que estaban apuntados en el mismo. Que pudo ver en dicho papel varios números de tres cifras seguidos de guión y unidad a la derecha los cuales son números típicos del juego ilegal conocido por Bolita y/o Boli-Pool, los cuales estaban apuntados con lápiz. Que luego el Sr. Félix Laureano le dijo a dicho individuo que le dijera a Eusebio y a Rafael que el domingo por la mañana le trajeran las listas temprano. Que como yo estaba en ese momento realizando un trabajo confidencial y tengo órdenes de no identificarme como policía, resolví mejor tomar nota del asunto e informar a mis superiores y actuar de acuerdo a lo que se me ordenara."

Radicó el peticionario una moción de supresión de evidencia en la que alega, entre otros fundamentos, que el material obtenido mediante la orden de allanamiento no fue ocupado conforme a derecho.

Celebrada la vista correspondiente el 21 de diciembre de 1964, el tribunal de instancia dictó una resolución de fecha 28 de diciembre de 1964 en la cual declaró sin lugar la referida moción, se inhibió del proceso, e instruyó al secretario para que refiriera el expediente al Juez Administrador para señalamiento del juicio. A solicitud del apelante expedimos auto de *certiorari* el 27 de enero de 1964 para revisar dicha resolución.

Apunta el peticionario la comisión de tres errores por el tribunal de instancia que consideramos a continuación.

1.—"Erró el Tribunal recurrido al declarar sin lugar la Moción de Supresión de Evidencia a base de que tenía que presumir la corrección de los procedimientos, a pesar de que el agente encubierto que prestó la declaración jurada que motivó el allanamiento, declaró que no había sido examinado por el Juez que expidió la Orden en violación de la Regla número 231 de las de Procedimiento Criminal de Puerto Rico, de la Constitución del Estado Libre Asociado y la Constitución Federal."

En apoyo de este apuntamiento, el peticionario señala que la frase "examen del declarante" (usada en la Regla Núm. 231 de las Reglas de Procedimiento Criminal) "conlleva algo más que una mera lectura de lo que ha escrito un deponente.", y que un magistrado no ha de rendir la "ponderada función judicial" al arbitrio de un agente encubierto por honesto que éste pueda ser. Además, continúa el peticionario, no es esta función de examinar "una cuestión clerical ni de rutina, ni pro forma, sino de examen y convencimiento y en este caso el juez que expidió la orden nunca examinó al deponente, según propia declaración del agente en la silla de los testigos". Arguye el peticionario "que un examen presupone indagación e investigación a fin de quedar convencido el magistrado para luego autorizar la orden de allanamiento, no es una mera autenticación de una mera declaración jurada porque ello muy bien lo podía hacer un Secretario del Tribunal o un Notario Público, es a nuestro modo de ver una función estricta y exclusivamente judicial."

Ya que está en íntima relación con esta cuestión procesal—del examen del declarante—el peticionario discute la expresión del juez recurrido de que "presumía la corrección de los procedimientos". Arguye el peticionario que: "Una norma de presumir la corrección de los procedimientos coloca al peticionario o a cualquier ciudadano en un estado de indefensión y convertiría en académica cualquier Moción sobre Supresión de Evidencia, ya que cualquiera que fuera la prueba que presente el peticionario no podría controvertir la supuesta presunción."

El Procurador General sostiene que de los autos originales del caso y de la transcripción de evidencia surge que se dio cumplimiento a la Regla 231 de Procedimiento Criminal y que de la "orden de registro expedida por el Juez de Paz, Jorge Rosario Torres, éste afirma haber examinado al declarante, Ángel M. Rodríguez". Explica el Procurador que "surge claramente que el agente prestó su declaración ante el Hon. Juez, el cual estuvo presente todo el tiempo. *Es forzoso pensar que mientras todo esto ocurría el juez y el agente hablaran sobre los detalles del caso.* El Juez tuvo oportunidad de oir al agente mientras dictaba su declaración, la cual fue jurada ante él y luego revisó la misma." Dadas esas circunstancias, continúa exponiendo el Procurador General, "sostenemos que se dio *cumplimiento sustancial* a la Regla 231 y que el peticionario no sufrió perjuicio sustancial alguno, ya que el Juez tenía ante sí *suficiente base* para quedar convencido de que existía causa probable para el registro." (Énfasis nuestro.)

Añade el Procurador General: "Nuestra posición es más clara aún si se toma en cuenta que bajo la Regla 231, contrario al estado de derecho anterior, no es necesario que el juez conduzca dicho examen bajo juramento ni que tome deposiciones por escrito, según lo establecido por el art. 504 de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 1814."

La Regla 231 de las de Procedimiento Criminal dispone, en la parte pertinente a este caso, que:

"No se librará orden de allanamiento o registro sino en virtud de declaración escrita, prestada ante un magistrado (²) bajo juramento o afirmación que exponga los hechos que sirvan de fundamento para librarla. *Si de la declaración jurada y del examen del declarante* el magistrado quedare convencido de que existe

---

(²) De acuerdo con la Regla Núm. 3 de las de Procedimiento Criminal:
"Un magistrado es un funcionario con autoridad para dictar una orden de arresto contra una persona a quien se le imputa un delito. Son magistrados los jueces del Tribunal Supremo, los jueces del Tribunal Superior, los jueces del Tribunal de Distrito y los *jueces de paz*." (Énfasis nuestro.)

causa probable para el allanamiento o registro, librará la orden
. . . ." (Énfasis nuestro.)

Esta Regla 231 comprende un aspecto que estaba cubierto
por el Art. 504 del Código de Enjuiciamiento Criminal que
leía así:

"El juez de paz debe, antes de librar la orden de allanamiento,
examinar bajo juramento al querellante y a los testigos que éste
presentare, tomando sus deposiciones por escrito, las cuales sus-
cribirán."

Este Art. 504 procede del Art. 1526 del Código de En-
juiciamiento Criminal de California.

Además del Art. 504, los Arts. 505 y 506 del Código de
Enjuiciamiento Criminal prescribían que la declaración ju-
rada debe exponer "los hechos que tiendan a demostrar los
fundamentos de la petición, o las causas legítimas que haya
para creer que existen tales fundamentos" y que el juez
debe librar la orden si quedare "plenamente convencido de
que hay fundamento para la petición o causas legítimas para
creer en la existencia de aquellos fundamentos . . . ."

Aunque la referida Regla 231 está basada en la Regla
Núm. 41 (c) de las Reglas Federales de Procedimiento Crimi-
nal y los Arts. 1525 a 1528 del Código Penal de California,
el examinar al declarante como requisito de la determinación
de causa probable para el allanamiento o registro no es un
requisito bajo la regla federal y es discrecional ahora en
California, de acuerdo con el Art. 1526 de su Código Penal.

■ Una lectura de la declaración jurada en este caso
revela, sin lugar a dudas, que relaciona hechos y circunstan-
cias que justifican ampliamente de por sí la existencia de
causa probable. *United States* v. *Ventresca*, 31 U.S.L. Week
4193 (1965); *Pueblo* v. *Cintrón*, 80 D.P.R. 360 (1958);
*Pueblo* v. *Rivera*, 79 D.P.R. 742 (1956); *Pueblo* v. *Mantilla*,
71 D.P.R. 36, 52 (1950); *Brinegar* v. *United States*, 338
U.S. 160, 175 (1949). Se arguye, sin embargo, que esto no

es suficiente; que, además, el magistrado venía obligado a "examinar al declarante".

El apuntamiento del peticionario se apoya en el siguiente incidente durante el interrogatorio del agente encubierto que juró la declaración que sirvió de base para la expedición de la orden de allanamiento en este caso:

"P. ¿Usted le dictó a la secretaria suya, particular suya; usted firma la declaración; el Juez la revisó y escribió la orden?

R. Sí, señor.

P. ¿Eso fue todo lo que ocurrió ahí?

R. Sí, señor.

P. ¿Qué le quiere decir, para que no haya confusión con que el Juez revisó la declaración jurada? ¿Que me quiere decir con eso?

R. Cuando yo fui a juramentar la declaración él revisó la declaración y a base de la declaración expidió la orden de allanamiento.

P. ¿Lo que quiere decir con revisar es que el Juez la leyó?

R. Sí, señor.

P. ¿Eso fue todo lo que hizo el Juez?

R. Sí, señor.

P. ¿Al hacer eso expidió la orden?

R. Sí, señor.

P. ¿Eso fue en qué Cuartel?

R. Cuartel de la Policía de Arecibo que es donde están las oficinas."

■ Surge claramente del récord de este caso que mientras el policía dictaba su declaración a la secretaria en el cuartel, el juez de paz estaba presente y escuchando y que al terminar la secretaria, el juez de paz revisó la referida declaración. Si dicho juez no le hizo preguntas, como testifica el policía, fue porque no lo consideró pertinente, pues no necesitaba información adicional alguna para llegar a la conclusión judicial de que de la declaración jurada surgía causa probable para ordenar el registro. Concluimos que en estas circunstancias se cumplió con el requisito de examinar al declarante, pues el término "examen" no significa exclusivamente el

hacerle preguntas al declarante. De hecho el referido examen se llevó a cabo cuando la declaración se dictó ante el magistrado que la oyó y que luego la revisó y determinó que ésta contenía hechos suficientes para justificar plenamente la determinación de causa probable. En esas circunstancias resultaba innecesario y fútil el hacerle pregunta otra alguna al declarante sobre tales particulares. Es juicioso señalar, sin embargo, que en circunstancias que no sean similares a las que privan en este caso, los jueces deben "examinar" más específicamente al declarante, además de su declaración jurada. Como dijo el Juez Holmes, el derecho contra registros arbitrarios e irrazonables "debe protegerse aun si el mismo resultado hubiera podido alcanzarse en forma legal". *Silverthorne Lumber Co.* v. *United States*, 251 U.S. 385 (1920).

No podemos imprimirle en derecho a la frase "examen del declarante", que se utiliza en el texto de la Regla 231, el enfoque literal que apunta el peticionario, pues aunque estamos conscientes y debemos ser celosos guardianes del principio de que los requisitos procesales que salvaguardan el derecho contra registros arbitrarios e irrazonables deben observarse estrictamente, también creemos que un enfoque práctico es el que debe prevalecer en esta materia, como se indicó en *Brinegar*, supra. Es preciso aclarar que este enfoque práctico no está reñido con el principio que hemos expuesto en cuanto a los requisitos procesales sino que, al contrario, contribuye a hacerlos viables.

En *Ventresca*, supra, el Juez Goldberg, después de citar varios casos que ilustran los principios que gobiernan el criterio de causa probable, dijo:

"Estas decisiones reflejan el reconocimiento de que los requisitos de la Enmienda Cuarta, como todos los requisitos constitucionales, son prácticos y no abstractos. Si las enseñanzas de los casos del tribunal han de seguirse y la norma constitucional ha de cumplirse, las declaraciones juradas en relación con órdenes de allanamiento, como la que está envuelta aquí, tiene que ponerse

a prueba e interpretarse por magistrados y tribunales con sentido común y en forma realista . . . . Requisitos técnicos de elaborada especificación que una vez se exigían en las alegaciones bajo la *ley común* no tienen lugar apropiado en esta área . . . ."

Y, más luego en este caso, advierte dicho magistrado que:

"Una actitud negativa o mezquina por parte de los tribunales revisadores con respecto a las órdenes de allanamiento tiende a desalentar a los oficiales de la .policía en cuanto a someter su prueba a un funcionario judicial antes de actuar".

En vista de lo expuesto concluimos que no se incurrió en el error apuntado por el peticionario.

2–3 Como segundo y tercer errores incurridos por el tribunal sentenciador, se imputa lo siguiente:

2.— "Erró el Tribunal recurrido al denegar la Moción de Supresión de Evidencia fundada en la falsedad de la declaración jurada, ya que la prueba del peticionario nunca fue controvertida."

3.— "Erró el Tribunal recurrido al concluir que la declaración jurada era suficiente sin que el Agente encubierto que la prestó sostuviera en Corte los hechos que sirvieron de base a dicha declaración jurada."

Arguye el peticionario que presentó prueba demostrativa de la falsedad de la declaración jurada, al efecto que en el día y hora señalada en la declaración se encontraba el peticionario en otro sitio distinto al que informó el agente encubierto en su declaración y que el fiscal no presentó prueba alguna para controvertir ese hecho. Añade que el agente "sólo declaró haber visto al peticionario en su negocio sin decir nada sobre transacciones ilegales del juego de Bolita, conforme a lo que dijo en su declaración jurada" y que "era obligación del Ministerio Fiscal probar los hechos que aparecen en la declaración jurada que dio origen a la Orden de Allanamiento lo que no se hizo". Por el contrario, informa el Procurador General que la argumentación del peticionario va más bien dirigida a atacar la apreciación que de la prueba hizo el juez de instancia; que éste "no le dio crédito a la prueba.

en ese sentido (de la referida coartada) y dio para el récord las razones que tuvo para ello, y que contrario a lo afirmado por el peticionario, el testimonio del médico fue controvertido por el agente Rodríguez, el cual insistió que el acusado se encontraba en su negocio esa tarde."

■ Es un principio establecido que la suficiencia de la declaración jurada que sirve de base a la expedición de una orden de allanamiento puede impugnarse mediante prueba de que lo afirmado bajo juramento en la declaración es falso. *Pueblo* v. *Torres*, 80 D.P.R. 245 (1958).

En este caso la prueba presentada giró exclusivamente en torno a la defensa de coartada, de manera que no hubo oportunidad de cuestionar, y por lo tanto, de aducir prueba en relación con las transacciones ilegales del juego de Bolita relacionadas en la declaración jurada.

■ De un examen del récord surge que el juez no le dio crédito a la prueba presentada por el peticionario y que creyó al agente encubierto. Siendo ésta una cuestión de credibilidad y habiendo examinado todo el expediente, sostenemos que no hay razón para intervenir con la apreciación que de la prueba testifical hizo el juez de instancia.

*Se anulará el auto expedido y se devolverá el caso para ulteriores procedimientos.*