EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* VÍCTOR RIVERA BURGOS, acusado y apelante.

*Número:* CR-77-55 *Resuelto:* 28 de noviembre de 1977

*Luis F. Abreu Elías,* abogado del apelante; *Héctor A. Colón Cruz, Procurador General,* y *Ricardo Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El apelante fue convicto de tener en su posesión y dominio material que podía utilizarse y se utilizaba en el juego ilegal de la bolita. Apela de la sentencia impuéstale, que le condenó a pagar una multa de $350. Señala la comisión de un solo error "al declarar culpable al acusado, en base a una declaración flaca y descarnada; insuficiente, de por sí, para probar su culpabilidad más allá de duda razonable." No tiene razón.

La única prueba aportada en el juicio consistió en el testimonio de un agente de la Policía y en el material delictivo que obtuvo, consistente en diez series en diferentes colores que el apelante le vendió por $360 para el juego conocido por "bolita" o "bolipool." El testimonio del agente, quien no fue contrainterrogado, puede sintetizarse como aparece a continuación:

Para el 30 de septiembre de 1975 trabajaba en la Policía como agente encubierto. En la tarde de ese día se encontró en la cafetería "La Awilda" en el barrio Santana de Arecibo con un "amigo" suyo a quien conoce por Cheo, a quien invitó a tomar una cerveza. Cheo, quien evidentemente estaba conectado con el juego de bolita, le pidió al testigo que lo llevara a Isabela a casa de don Víctor—el aquí apelante—a comprar un material de bolita. Le explicó que su carro estaba roto y el testigo accedió. En Isabela fueron a la barriada Corchado a la casa del apelante, "una casa de alto y bajo, de dos pisos, tiene marquesina y garaje, por cierto ese día estaba poniendo alfombra."

No surge de la prueba si hubo una transacción entre Cheo y Víctor porque a ello objetó el apelante y el tribunal le sos-

tuvo. Véase pág. 4 de la exposición narrativa, que parece ser una transcripción *ad verbatim* del testimonio del agente. Sí surge que el agente fue presentado a Víctor por Cheo, y el agente aprovechó para preguntar a Víctor si le podía "conseguir unas libretas para un amigo que yo tenía en Manatí, que él tenía una pequeña banca." (E.N. pág. 5.) A esto contestó Víctor que no tenía el material, que volviese la próxima semana, el 6 de octubre. Acordaron que Víctor le supliría 10 series por valor de $360.

El 6 de octubre el agente volvió donde Víctor a Isabela a eso de las 11:30 de la mañana y se efectuó la transacción. El agente pagó los $360 y Víctor le entregó las 10 series en diferentes colores, que marcó con su nombre y número de su placa y que entregó ese mismo día en el cuartel de la Policía de Arecibo. El material lo sacó Víctor del baúl de un carro que estaba estacionado en su marquesina: un Cadillac, modelo 1969, color verde.

Concluido el testimonio del agente, el abogado del apelante se negó a repreguntar. El tribunal admitió el material adquirido del apelante y dictó su fallo.

■ No hay que hacer más análisis del testimonio que hemos resumido para concluir que no es una versión estereotipada, ni está desprovisto de detalles que señalamos en *Pueblo* v. *González del Valle*, 102 D.P.R. 374 (1974), para hacerlo indigno de crédito. Por el contrario, es testimonio creíble y con suficiente "carne en sus huesos" para superar las exigencias de *Pueblo* v. *Ayala Ruiz*, 93 D.P.R. 704 (1966). Si no fue más específico en sus detalles se debió a numerosas objeciones del abogado del propio apelante, resueltas equivocadamente a su favor. Esto nos mueve a exponer algunas consideraciones respecto a lo que es y lo que no es prueba de referencia.

■ Con alguna frecuencia en nuestros tribunales de instancia abogados, fiscales y jueces se inclinan a considerar que todo lo que un testigo exprese que alguien le haya dicho es prueba de referencia. Basta que el testigo diga "Fulano me

dijo . . . ." para que se produzca de inmediato una objeción, y enseguida el pronunciamiento del juez: "Con lugar." No siempre es prueba de referencia lo manifestado por un tercero al testigo, o lo que el testigo oyó que un tercero dijo. Para que lo manifestado sea prueba de referencia, y por tanto inadmisible a menos que caiga bajo alguna excepción, la manifestación debe tener algún contenido que pueda ser cierto o falso, y que dicha manifestación, al ser trasmitida al tribunal por el testigo que la oyó, se produzca para probar que lo manifestado es cierto.

Ilustremos esto con algunos ejemplos. El testigo declara: "Juan me dijo que me fuera para mi casa." Esa manifestación de Juan no implica la expresión por Juan de algo cierto o de algo falso y no es por tanto, al ser relatada por el testigo, prueba de referencia.

■ Veamos, ahora, este otro ejemplo. El testigo declara: "Juan me dijo que Pedro hurtó el dinero." Lo manifestado por Juan—Pedro hurtó el dinero—puede ser cierto y puede ser falso. Ahora bien, debe determinarse con qué propósito se reproduce esa manifestación ante el tribunal pues de ello dependerá si es o no prueba de referencia. Si lo que se trata de probar es quién hurtó el dinero, sería prueba de referencia y por tanto inadmisible. Pero si sólo se quiere probar que Juan hizo esa manifestación—no si lo dicho por Juan es o no cierto—no es prueba de referencia.

Dos ejemplos ilustrarán este punto. Supongamos, en primer lugar, que se le celebra juicio a Pedro por haber agredido a Juan. El fiscal presenta un testigo que declara haber visto cuando Pedro agredió a Juan. Se le pregunta: "En qué momento agredió Pedro a Juan?" El contesta: "Cuando Juan dijo que Pedro hurtó el dinero." Es decir, que mediante ese testimonio se establece el móvil de la agresión, a saber, la imputación hecha por Juan a Pedro. Lo manifestado por Juan no es, en este primer supuesto, prueba de referencia.

Tampoco lo es en el siguiente segundo supuesto. Supongamos que Pedro está acusado de haber hurtado un dinero. Un policía que investigó el hurto entrevistó a Juan y Juan le dijo que Pedro hurtó el dinero y lo sabe porque él lo vio. En el acto del juicio el fiscal llama a declarar a Juan para que testifique lo que dijo al policía, pero Juan dice no saber quién hurtó el dinero. Sentadas adecuadamente las bases de impugnación, se trae al policía a declarar lo que Juan le dijo, es decir, que Pedro hurtó el dinero. El testimonio del policía no es en ese momento presentado al tribunal para probar que Pedro hurtó el dinero. Sería inadmisible para ese propósito. Es admisible únicamente para impugnar a Juan, demostrar que Juan mintió cuando declaró como testigo y dijo no saber quién hurtó el dinero. El testimonio del policía a este efecto no es prueba de referencia. Es prueba de un hecho: que Juan dijo que Pedro hurtó el dinero. ([1])

 Las reglas sobre admisibilidad de las pruebas judiciales persiguen el propósito de facilitar el conocimiento de la verdad. No existen para oponer obstáculos. Es deber de abogados y jueces conocerlas y aplicarlas correctamente. Desconocerlas puede conducir al fracaso de la justicia. Conocerlas y aplicarlas mal es aún peor. Pecar de injusto por ignorancia es lamentable. Procurar soluciones injustas mediante argucias es abominable. El propósito del proceso judicial es hacer justicia, y el único medio para lograr ese fin es abrir caminos al esclarecimiento de la verdad.

*Se confirmará la sentencia apelada.*

El Juez Asociado Señor Rigau no intervino. El Juez Asociado Señor Díaz Cruz concurre en el resultado y hace la siguiente expresión: "No considero propio en opinión del Tribunal la saturación didáctica que exhibe este *per curiam.*"

---

([1]) Para mayor abundamiento sobre esta breve exégesis, consúltense: McCormick, *On Evidence,* 2da. ed. (1972), sec. 246, págs. 584–585; sec. 249, págs. 588–595; Jones, *On Evidence,* 5ta. ed. (1958), vol. 2, sec. 271, pág. 521; Wigmore, *On Evidence* (1974), vol. V, sec. 1361, pág. 2.