EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* AMADO ALMODÓVAR, acusado y apelante.

*Número:* CR-79-21      *Resuelto:* 17 de octubre de 1979

*José O. Ayala Pratts*, abogado del apelante; *Héctor A. Colón Cruz, Procurador General*, y *Miguel A. Santana Bagur, Procurador General Auxiliar*, abogados de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

La figura del agente encubierto vuelve a escena en este caso. Examinemos las normas principales sentadas por esta Corte para regir su uso. Analicemos luego su efecto sobre la causa que nos ocupa, en que se apela la imposición de una multa de cuatrocientos dólares, más costas, o prisión subsidiaria, por una alegada violación del Art. 4 de la Ley de Bolita, Ley Núm. 220 de 15 de mayo de 1948, 33 L.P.R.A. sec. 1250.

En *Pueblo* v. *Seda*, 82 D.P.R. 719, 730 (1961), reconocimos que "el agente encubierto es un arma de identificación que es necesario utilizar en ciertos delitos, que por su característica esencial de clandestinidad, permanecerían impunes si no se contara con este método." Señalamos, no obstante, que en los casos en que no se presenta prueba física de la supuesta venta de bolita el tribunal de instancia "debe ser muy cauteloso" en su apreciación. *Ibid.*, 733.

En *Pueblo* v. *Luciano Arroyo*, 83 D.P.R. 573, 581 (1961), expresamos que "desde hace algún tiempo nos preocupa el hecho de que las declaraciones juradas que sirven de base a muchas órdenes de allanamiento que nos ha correspondido examinar, principalmente aquellas que se expiden en casos de 'bolita', contienen unas expresiones estereotipadas mediante las cuales el declarante manifiesta haber observado a ciertas personas manipular material de 'bolita' en sitios abiertos a la inspección casual de cualquier transeúnte y a horas de intenso tráfico." Procedimos en esa ocasión a revocar la sentencia por considerar increíble la declaración jurada.

Nuestra preocupación creció y en *Pueblo* v. *Ayala Ruiz*, 93 D.P.R. 704, 708 (1966), afirmamos que "no es remota la posibilidad de que en su afán de erradicar el mal social que entraña el juego ilegal de bolita se incluya a personas inocentes. El método de investigación debe mejorarse para evitar que el pueblo pierda la fe en la justicia." A tal fin establecimos varias pautas para impedir que una condena dependa del testimonio "flaco y descarnado" de un agente encubierto y colocar al juzgador en posición de conferirle el grado óptimo de credibilidad. Señalamos que el agente debe revelar: el término durante el cual se extendió la investigación, el área cubierta, los resultados obtenidos y las causas presentadas contra otros infractores atrapados en la redada, la identidad de otras personas que realizaron transacciones con el acusado observadas por el agente y las razones por las cuales se destruyeron las anotaciones que el agente debe tomar a raíz de cada trato o negocio. *Loc. cit.*

Un año más tarde, en *Pueblo* v. *Soto Zaragoza*, 94 D.P.R. 350, 354 (1967), otro caso de bolita, este Tribunal invocó en forma expresa su facultad inherente de supervisar los procedimientos judiciales y expuso:

"*En casos de esta naturaleza la función judicial no puede limitarse a determinar sobre la suficiencia de prueba y la credibilidad de testigos.* Ante el conocimiento de una situación de evidente desventaja para los acusados, pecaríamos de fetichistas, si

nos limitáramos a cerrar los ojos ante la realidad y a aplicar con precisión electrónica la doctrina de no intervención con la apreciación de la prueba. Nuestra responsabilidad con un sistema de orden e imparcialidad en los procedimientos judiciales no se satisface plenamente con trasladar el problema al ámbito legislativo; demanda que en la consideración de los recursos ante nos requiramos prueba que rodee la sola declaración del agente encubierto de algo más que los particulares mínimos para establecer la infracción." (Énfasis en el original.) (Escolio omitido.)

Quedó así establecido que en los casos de bolita no basta con el testimonio único del agente encubierto para sostener un fallo condenatorio, cuando no se le rodea de los detalles expresados en *Ayala Ruiz*.

En *Pueblo* v. *Rosario Torres*, 101 D.P.R. 840 (1973), extendimos la regla de *Ayala Ruiz* y *Soto Zaragoza* a los casos de infracción de la Ley de Sustancias Controladas, Ley Núm. 4 de 23 de junio de 1971, 24 L.P.R.A. sec. 2101 *et seq.*

En *Pueblo* v. *González del Valle*, 102 D.P.R. 374, 377 (1974), aludimos a "otras modalidades, a veces no reconocidas como tales, del testimonio estereotipado, particularmente la del acto-ilegal-a-plena-vista en transacciones que normalmente se amparan en la clandestinidad." Enumeramos allí una vez más los criterios para evaluar la credibilidad del testimonio estereotipado, reiteramos que todo testimonio de este género debe escudriñarse con especial rigor y advertimos que recae en el fiscal la carga de la prueba para librar de sospecha tales declaraciones. *Ibid.*, 378.

Nuestras expresiones en *Pueblo* v. *Rosario Torres*, supra, 840–41, 844–46, no han perdido vigencia:

"La persecución de los delitos de la época contemporánea como el tráfico de narcóticos, la bolita y las distintas prácticas de terrorismo ha hecho necesario utilizar el agente encubierto e informadores pagados para obtener evidencia incriminatoria contra este tipo de delincuentes. Se ha investido al agente encubierto de extraordinario poder sobre la libertad de los seres humanos en quienes recaiga su acusación, extendiéndole una credibilidad sin precedentes a su testimonio aun cuando falte la más insignificante corroboración con evidencia material.

Bien pronto surgió a la luz la corrupción e indignidad de agentes que fabricaron casos y se apropiaron los fondos del erario público que se suponía utilizaran en la compra de drogas. Muy poca protección tenían en la ley los ciudadanos falsamente acusados. Algunos tuvieron la suerte de que los propios fiscales que honran su ministerio descubrieran la podredumbre y pidieran el archivo de los casos; y alguno que otro tuvo el beneficio de un juez alerta y acuciador; los menos allegaron los medios de producir una coartada inexpugnable contra la patraña vestida con clámide oficial.

.        .        .        .        .        .        .        .

Estamos plenamente enterados de la gran utilidad del agente encubierto que se adentra en el corazón mismo de la conspiración y penetra los más oscuros recintos del crimen organizado y con gran exposición de su vida saca los infractores de la sombra y clandestinidad para traerlos a responder por sus actos en la sala de justicia. No estamos, por tanto, preconizando, ni siquiera alentando el abandono de este método de investigación y procesamiento. Confiamos en que los hombres seleccionados para esta labor sean de integridad sin tacha. Pero habida cuenta de la enorme influencia que sobre el destino del encausado puede generar el testimonio del agente, en reverencia a la libertad de los seres humanos con quienes interviene, se impone una aumentada exigencia y un mayor rigor en la estimación por las cortes de las actuaciones del agente encubierto. La triste experiencia con agentes inescrupulosos y prevaricadores ha puesto toda la organización bajo severa evaluación y se hace necesario elevar las normas mínimas de credibilidad. De lo contrario degradaríamos la libertad." (Escolios omitidos.)

La preocupación de este Tribunal por el uso a solas del testimonio de agentes encubiertos sin salvaguardas que fortalezcan su credibilidad no es una preocupación aislada. Muchos la comparten desde hace considerable tiempo. Donnelly, *Judicial Control of Informants, Spies, Stool Pigeons and Agent Provocateurs,* 60 Yale L.J. 1091 (1951); López Baralt, *Posición del Tribunal Supremo Frente al Testimonio Único del Agente Encubierto,* 37 Rev. Jur. U.P.R. 583 (1968); Note, *Informers in Federal Narcotics Prosecutions,* 2 Colum. J.L. and Soc. Sci. 47 (1966); Lundy, *Police Undercover Agents: New Threat to First Amendment Freedoms,* 37 Geo. Wash. L.

Rev. 634 (1969); Dix, *Undercover Investigations and Police Rulemaking*, 53 Texas L. Rev. 203 (1975); Valldejuli Pérez, *El Agente Encubierto y el Tribunal Supremo de Puerto Rico*, 44 Rev. Jur. U.P.R. 143 (1975).

La necesidad de que la rama judicial fije pautas, en adición a las que las ramas legislativa y ejecutiva puedan establecer, para lograr el debido y difícil balance entre los valores en juego se ha reconocido también fuera de Puerto Rico. Lundy, *supra*, 667. Se ha argumentado especialmente a favor del control judicial previo y continuo de las actividades encubiertas, excepto cuando medien circunstancias apremiantes. *Ibid.*, 663–64; Notes and Comments, *Judicial Control of Secret Agents*, 76 Yale L.J. 994, 1017–19 (1967).

En el informe de la Comisión de Derechos Civiles de 8 de diciembre de 1971 sobre el "Uso de Informantes Pagados y Agentes Encubiertos por la Policía de Puerto Rico", *Informes de la Comisión de Derechos Civiles del Estado Libre Asociado de Puerto Rico*, Equity Publishing Corp., Orford, N.H., 1973, Tomo 2, págs. 529, 577, se recomendó que en los casos de tráfico ilícito de narcóticos:

"... el agente encubierto debe tratar de identificar a la persona con quien realizó la transacción a su supervisor o a otro agente del orden público dentro de un término razonable después de efectuada la transacción y tanto el agente encubierto como el supervisor o agente del orden público que intervinieron en la identificación deben rendir un informe escrito a ser conservado por el supervisor en relación con la forma y circunstancias, fecha, hora y sitio donde se realizó la identificación y una descripción completa de la persona identificada, incluyendo el nombre de dicha persona si fuere conocido. Este informe debe someterse inmediatamente después de realizada la identificación y en ningún caso después de 24 horas de efectuarse la misma, a no ser que existan causas graves que impidan así hacerlo; ...."

Adviértase igualmente que el Art. 523 de la Ley de Sustancias Controladas, Ley Núm. 4 de 23 de junio de 1971, 24 L.P.R.A. sec. 2523, ya había creado otra salvaguarda importante al requerir que:

"Todo personal de investigaciones que intervenga o participe como encubierto en una transacción de venta de drogas y sustancias controladas bajo las disposiciones de este Capítulo, deberá prestar ante un Fiscal, dentro de un término no mayor de 120 horas siguientes a haberse consumado la transacción de venta, una declaración jurada sobre su participación en la misma y los hechos pertinentes a ésta, a menos que se demuestre justa causa para una demora en someterla dentro del término antes indicado . . . ."

Nuestra anticuada Ley de Bolita no contiene precauciones de esta índole. El Art. 7 de este estatuto, la Ley Núm. 220 de 15 de mayo de 1948, 33 L.P.R.A. sec. 1253, autoriza al Gobernador a adoptar reglas para el gobierno de la fuerza de investigación allí creada con el propósito de hacer cumplir la ley. No se ha adoptado reglamento alguno a tal fin. Tampoco se ha enmendado la ley para exigir mayor control de las actividades en este campo del agente encubierto, tal como se hizo parcialmente en el caso de la Ley de Sustancias Controladas. Las recomendaciones de la Comisión de Derechos Civiles, la abundante literatura sobre el tema y las numerosas decisiones de este Tribunal no han surtido efecto en la legislación. A juzgar por el estado del récord de varias de las causas que llegan a este foro el impacto administrativo ha sido relativamente leve.

En el caso actual el Ministerio Público presentó a un solo testigo de cargo: el agente encubierto. Éste declaró que un sábado a la una de la tarde se hallaba frente a la plaza de Sabana Grande, donde se le había ordenado realizar investigaciones relacionadas con el juego de la bolita. El acusado llegó al lugar y al pasar por su lado invitó al agente a tomar una cerveza. El testigo sostuvo que conocía al acusado y que sabía que se dedicaba a la bolita porque lo vio hacer transacciones de este género en un negocio que el apelante tenía en otro sitio del pueblo. El testigo aceptó la cerveza y le preguntó al acusado, quien no tomó nada, si tenía cerrado su negocio. Éste contestó que su hermano le atendía el mismo mientras él cobraba unos números. Al cabo de unos minutos, continuó declarando el agente, entró al lugar una señora.

Recordaba tan solo que la señora "era trigueña y no muy alta." La señora celebró públicamente su suerte al encontrar allí al acusado, ya que no tendría que ir a su negocio para pagarle unos números de bolita. Al recibir el dinero, según el agente, el acusado le manifestó a la señora que le podía haber dejado el dinero con su hermano. Al marcharse la señora el acusado expresó que se le había olvidado que el negocio estaba solo y que tenía que irse. El agente le preguntó si le quedaba algún número y el acusado le pidió que lo acompañara fuera. Caminaron hacia el vehículo del apelante, de donde éste sacó un pedazo de papel de estraza que el acusado le entregó en la calle al agente para que éste lo examinara. El agente comprobó que "era una lista de bolipool", escogió un número, lo pagó y le devolvió el papel al acusado. El acusado volvió a guardar el mismo y se retiró.

El acusado ocupó la silla de los testigos. Declaró que era natural de Sabana Grande y propietario del negocio "Palacio Familiar", atendido personalmente por él y tres empleados. Presentó sus planillas de contribución sobre ingresos como índice de la prosperidad de su negocio. Afirmó que nunca había sido acusado de delito alguno. Negó haber visto jamás al agente encubierto. La defensa presentó prueba sobre la reputación del acusado en la comunidad.

■ La prueba de cargo relata la comisión de un acto ilegal a plena vista, en sitio abierto a la inspección casual de cualquier transeúnte, en horas de intenso tráfico. *Pueblo* v. *Luciano Arroyo*, 83 D.P.R. 573, 581 (1961). Este tipo de testimonio debe escudriñarse con especial rigor. *Pueblo* v. *González del Valle*, 102 D.P.R. 374, 377–78 (1974). La prueba en el caso de autos incumple claramente varias normas formuladas por este Tribunal para armonizar el interés en la punición del crimen con el de la protección de los ciudadanos que puedan ser falsamente acusados. *Pueblo* v. *Rosario Torres*, 101 D.P.R. 840, 841, 844–46 (1973).

■ En recursos como el de autos la convicción no puede

fundarse en el testimonio único del agente encubierto cuando la declaración se limita a relatar los particulares mínimos para establecer la infracción y omite detalles imprescindibles para reforzarla. *Pueblo* v. *Soto Zaragoza*, 94 D.P.R. 350, 354 (1967); *Pueblo* v. *Ayala Ruiz*, 93 D.P.R. 704, 708 (1966). La prueba de cargo presentada aquí omitió señalar el término durante el cual se extendió la investigación y los resultados obtenidos. No se identificaron otras personas que realizaron transacciones con el acusado observadas por el agente encubierto. No se ocupó el agente, contrario a la mejor práctica, de identificar a la señora "trigueña y no muy alta" o a las otras personas que él había visto antes alegadamente traficar ilegalmente en un sitio público, con el acusado. Véase, respecto a la similitud de este aspecto de los hechos, a *Pueblo* v. *Ayala Ruiz*, supra, 708; y a *Pueblo* v. *Bermúdez Pérez*, 94 D.P.R. 363, 372, n. 5 (1967). Tampoco hay noticia de las anotaciones que el agente debe tomar a raíz de cada transacción. Otros aspectos del testimonio del agente encubierto le restan verosimilitud. He aquí a un supuesto bolitero, dueño de un negocio floreciente, que realiza sus transacciones clandestinas en sitios y establecimientos públicos, a viva voz y a la vista de todos; que invita a una persona que a lo sumo es un conocido casual, con quien no ha acordado cita, a tomarse una cerveza sin propósito discernible; que le revela a esa persona con todo candor que ha dejado su negocio a cargo de un hermano para recoger el dinero que le deben del juego ilegal; y que al poco tiempo se contradice y expresa que se marcha porque se le había olvidado que su establecimiento se encontraba solo.

En situaciones como ésta es particularmente necesario que se cumplan a cabalidad los requisitos reseñados en *Ayala Ruiz* y su progenie. No basta con oponer el magro testimonio del agente, limitado a intentar establecer apenas los elementos integrantes del delito, a la prueba que presente la defensa. Reiteramos que el testimonio único del agente encubierto debe rodearse en estos casos de los detalles imprescindibles

que nuestra jurisprudencia señala para impartirle el grado óptimo de credibilidad. La exigencia de obtener esa prueba y presentarla no afecta la investigación y el castigo de este género de delitos. Conviene, por el contrario, que se adopten en los casos de bolita prácticas utilizadas en otros casos. ¿Por qué no se le exige al agente encubierto que preste una declaración jurada ante un fiscal dentro de pocas horas de realizar una transacción de bolita, tal como ocurre en los casos de sustancias controladas? ¿Por qué no se le requiere que identifique al infractor dentro de breve tiempo a su supervisor, tal como ha recomendado la Comisión de Derechos Civiles? Las técnicas de supervisión judicial continua deben recibir también atención cuidadosa.

No nos pronunciamos en este caso sobre el uso del agente encubierto en causas de naturaleza distinta a la de las decisiones citadas en esta opinión. Cada género de controversia puede entrañar modos diferentes de sopesar y proteger los valores envueltos. La tarea en toda situación es dificultosa. Para lograr el equilibrio necesario entre los intereses en juego insistimos en que el testimonio del agente encubierto se rodee de las salvaguardas mínimas que requiere nuestra jurisprudencia.

*En consideración a lo expuesto se revoca la sentencia apelada.*

El Juez Asociado Señor Negrón García no intervino.