EL PUEBLO DE PUERTO RICO, demandante, *v.* ROLANDO VEGA TRONCOSO y FAUSTINO TEXIDOR RAMÍREZ, demandados.

*Número:* O-83-548      *Resuelto:* 29 de diciembre de 1983

I

*Miguel Pagán, Procurador General Interino,* y *Miguel A. Santana Bagur, Procurador General Auxiliar,* abogados de El Pueblo, peticionario; *Erick J. Ramírez Nazario,* abogado de los recurridos.

## SENTENCIA

Los recurridos; Rolando Vega Troncoso y Faustino Texidor Ramírez fueron acusados de violar la Sec. 4 de la Ley de Bolita, 33 L.P.R.A. sec. 1250. La acusación se basó en que se les ocupó material relacionado con dicho juego ilegal durante un allanamiento realizado mediante orden expedida al efecto. La orden se basó en una declaración jurada del agente investigador Carlos Vega prestada el 20 de septiembre de 1982, en que expuso que había recibido la encomienda de investigar cierta información de que en la plaza del mercado de Cabo Rojo se vendían números de bolita y que posteriormente se "cuadraban" en una casa que estaba localizada detrás de la plaza. Fue a la plaza y allí observó a los acusados haciendo transacciones de bolita y luego los observó que salieron y se fueron a una casa localizada detrás de la plaza, a la que entraban y salían personas que estaban relacionadas con el juego de la bolita.

Se celebró juicio en el Tribunal Superior, Sala de Mayagüez. El juez declaró sin lugar una moción de supresión de evidencia y los halló culpables. Dictó sentencia, pero la dejó sin efecto y le concedió 15 días a la defensa para que sometiera una moción de reconsideración. Vista la moción,

los declaró culpables y les impuso multas de $500 a cada uno.

Una semana más tarde los recurridos presentaron una "Moción Solicitando [*sic*] Desestimación" en la que argumentaron que el tribunal debía archivar los cargos, porque el agente que intervino en el caso no prestó la declaración jurada dentro de las 120 horas como requiere la Sec. 4A de la Ley de Bolita, 33 L.P.R.A. sec. 1250a. El juez celebró una vista y estimó que el requisito de prestar la declaración jurada dentro de las 120 horas era de aplicación a los hechos del caso. En consecuencia, suprimió la evidencia y absolvió a ambos acusados.

El Procurador General recurrió ante nos y plantea que el requisito de prestar declaración jurada ante un fiscal dentro de las 120 horas siguientes a una transacción delictiva no es aplicable a los hechos de este caso, porque no hubo participación de un agente encubierto. El 15 de septiembre, emitimos orden a los recurridos para que mostraran causa por la que no debía expedirse el auto y revocar la resolución recurrida. Los recurridos han comparecido, pero no nos persuaden.

La Sec. 4A de la Ley de Bolita, *supra*, establece que todo agente encubierto que intervenga o participe en cualquier transacción delictiva relacionada con el juego ilegal de la bolita, o que sorprenda a cualquier persona que porte o conduzca material relacionado con dicho juego ilegal deberá prestar ante un fiscal, dentro de un término no mayor de 120 horas siguientes a haberse consumado los hechos delictivos, una declaración jurada sobre su participación en el referido incidente, que mencione detalles tales como el término durante el cual se extendió la investigación, el área cubierta, los resultados obtenidos, etc. Si la declaración no se presta dentro de ese término sin que haya justa causa para la demora, ni la declaración jurada ni el testimonio del agente podrán ser presentados en evidencia.

Los recurridos argumentan en su escrito para mostrar

causa que el incumplimiento con el requisito de prestar declaración jurada en el término de 120 horas impide que la declaración del agente sea utilizada para obtener una orden de allanamiento. No tienen razón.

La utilización del llamado agente encubierto, que se infiltra en la subcultura del crimen, puede ser un medio útil y eficaz para combatir el crimen, pero puede ser también, en manos inescrupulosas, un medio que viole los fundamentales principios de juego limpio y del debido proceso de ley. Las salvaguardas de la Sec. 4A responden a esa preocupación del legislador, que a su vez habíamos expresado jurisprudencialmente y recogimos en *Pueblo* v. *Almodóvar*, 109 D.P.R. 117, 125 (1979). Pero es cuando el agente encubierto infiltrado en ese bajo mundo participa en una transacción delictiva o la presencia, y a base de ello se procesa al imputado, que se impone su obligación de prestar prontamente —en el término de 120 horas— la declaración a que se refiere dicha disposición legal.

Los hechos del caso ante nos no presentan la figura del encubierto participante en los hechos que dan margen a la acusación. El agente Vega observó unos hechos y a base de ellos no se acusó a los recurridos. A base de ellos prestó a los seis días una declaración jurada para obtener una orden de allanamiento que se diligenció al día siguiente. Es a base de los hallazgos del allanamiento que se acusó a los recurridos. Y, en cuanto a este particular, la declaración jurada fue prestada oportunamente. En *Pueblo* v. *Tribunal Superior*, 91 D.P.R. 19, 32 (1964), señalamos que "[e]s generalmente aceptado que un período de veinte días es razonable, y que en exceso de veinte días, hasta treinta, puede justificarse de acuerdo con las circunstancias presentes en cada caso".

Se expide el auto, se revoca la resolución recurrida, y se devuelve el caso a instancia para ulteriores procedimientos.

Así lo pronunció y manda el Tribunal y certifica la Secretaria General. El Juez Asociado Señor Rebollo López

emitió opinión disidente a la que se unen el Juez Presidente Señor Trías Monge y el Juez Asociado Señor Negrón García.

(*Fdo.*) Lady Alfonso de Cumpiano
*Secretaria General*

—O—

Opinión disidente emitida por el Juez Asociado Señor Rebollo López, a la cual se unen el Juez Presidente Señor Trías Monge y el Juez Asociado Señor Negrón García.

En *Pueblo* v. *Almodóvar*, 109 D.P.R. 117, 126 (1979), al revocar una convicción por una supuesta infracción a la Ley de Bolita en vista de que la declaración del agente encubierto en que se basó la misma no cumplía con los requisitos de nuestra jurisprudencia, este Tribunal se preguntó el por qué "no se le exige al agente encubierto que preste una declaración jurada ante un fiscal dentro de pocas horas de realizar una transacción de bolita, tal como ocurre en los casos de sustancias controladas".

La Asamblea Legislativa de Puerto Rico, en obvia respuesta a nuestra llamada, aprobó la Ley Núm. 54 de mayo 27 de 1980. La referida ley, en lo pertinente, dispuso:

> *Toda persona que intervenga o participe como agente encubierto en cualquier transacción o venta* de material relacionado con los juegos generalmente conocidos como "Bolita", "Boli-pool", combinaciones clandestinas relacionadas con los *Pools* o bancas de los hipódromos de Puerto Rico y loterías clandestinas; *o que sorprendiere a cualquier persona portando* [sic] *o conduciendo* [sic] *o que tuviere en su poder en cualquier concepto*, cualquier papeleta, billete, *ticket*, libreta, lista de números o letras, boletos o implementos que pudieren usarse en dichos juegos ilegales bajo las disposiciones de las secs. 1247 a 1257 de este título, *deberá prestar ante un fiscal, dentro de un término no mayor de 120 horas siguientes a haberse consumado dicha transacción o venta o cualquiera de las acciones delictivas antes mencionadas, una declaración jurada sobre su participación en la misma y los hechos pertinentes a ésta,* incluyendo el término durante el cual se extendió la investi-

gación, el área cubierta, los resultados obtenidos y las causas presentadas contra otros infractores atrapados en la redada, así como la identidad de otras personas que realizaron transacciones con el acusado observadas por dicho agente encubierto. *El término de 120 horas aquí establecido será de estricto cumplimiento, excepto que se demuestre justa causa para una demora en someter la declaración jurada dentro del término antes indicado.*

*Cuando el Tribunal determinare en la vista preliminar que dicha declaración jurada no fue prestada, o que habiéndose prestado fuera del término de 120 horas no hubo justa causa para la dilación, ni dicha declaración jurada ni el testimonio del agente encubierto podrán ser presentados en evidencia.*

En la determinación de justa causa se tomará en consideración, entre otros factores, el que la investigación no hubiere concluido dentro del término antes indicado. (Énfasis suplido.)[1]

Obsérvese que el legislador fue "más allá de lo requerido" por este Tribunal en *Pueblo* v. *Almodóvar*, ante. No sólo requirió la prestación de la declaración jurada en casos en que un agente de la Policía de Puerto Rico, en función de "encubierto", interviniera o participara como tal en una transacción en violación de la Ley de Bolita, sino que exigió que se prestara la declaración aun en casos en que agentes "regulares" de la Policía *sorprendieren* a personas que porten o conduzcan material relacionado con dicho juego ilegal.

La intención del legislador al aprobar dicha ley fue obvia: garantizar al máximo los derechos de la ciudadanía contra la actuación inescrupulosa de agentes de la Policía de Puerto Rico.

Ahora bien, específicamente en cuanto a la intervención o participación de un agente encubierto, procede que nos preguntemos: ¿quién, y qué, es un agente encubierto?

Como es sabido, de ordinario, un agente encubierto es un miembro *bona fide* de la Policía que al ocultar su identidad

---

[1] 33 L.P.R.A. sec. 1250a.

como tal se "infiltra" por un período dentro de un segmento de nuestra sociedad o determinada "organización", y se gana la confianza de sus ciudadanos, con el propósito de acumular evidencia que pueda ser luego presentada en los tribunales de justicia en contra de esos ciudadanos.[2] Hemos expresado, en adición, que "el agente encubierto es un arma de identificación que es necesario utilizar en ciertos delitos, que por su característica esencial de clandestinidad, permanecerían impunes si no se contara con este método". *Pueblo* v. *Seda*, 82 D.P.R. 719, 730 (1961).

Ese período durante el cual ese miembro de la Policía desempeña su función de "encubierto" es uno que, por obligación, *es indeterminado*. En otras palabras la labor del agente encubierto, dependiendo de las circunstancias, puede durar días, semanas, meses y hasta años.

Con ello en mente, examinemos la declaración jurada que ante un magistrado prestara el "agente investigador" Carlos Vega Castro el *20* de septiembre de 1982, que dio base a la orden de allanamiento que se expidiera en esa misma fecha por el magistrado en cuestión, según surge la misma de la referida orden. En lo pertinente, se expresa:

### ORDEN DE REGISTRO O ALLANAMIENTO

EL PUEBLO DE PUERTO RICO, A agentes orden público, en el Distrito de Mayaguez.

Habiéndose en este día presentado prueba por medio de Declaración Jurada firmada por Agte. Carlos Vega Castro 9-4010, quien fue examinado por mí de que, trabaja para la Policía de Puerto Rico, adscrito al N.A.C. de Mayaguez *en calidad de Agente Investigador* de la Sección Control del Vicio *en donde se le ha encomendado realizar investigaciones confi-*

---

[2] En *Black's Law Dictionary*, 5ta ed., St. Paul, Minnesota, West Publishing Co., 1979, pág. 1368, se define el agente encubierto como: "A person who works as an agent without disclosing his role as an agent. In police work, one who makes contact with suspected criminals without disclosing his role as an agent of the police. He gathers evidence of criminal activity which may later be used at trial of the criminals. . . ."

*denciales relacionadas con el juego ilegal dse* [sic] *la bolita y/o bolipool y otros delitos.*

*Que el día 7 de Septiembre de 1982 mientras se encontraba realiznado* [sic] *investigaciones confidenciales en la plaza del mercado de Cabo Rojo* ya que tenía información de que la misma era visitada por un señor C/P Arcangel Rodríguez y este se dedicaba a vender números de bolita y luego se niba [*sic*] a una casa detrás de la referida plaza a ver cuaarar [*sic*] dichos números. El agente lo encontró hablando con un señor grueso, barrigón de pelo canoso y este le estaba mostrando una hoja de pepl [*sic*] *en la cual habían números de bolita escritos,* y el señor grueso le hizo entrega de un dinero. Luego Arcangel entró en varios puestos de la referida plaza cobrando dinero. Luego salió de la plaza por la parte de atrás y entró a la casa #20 de la calle Hostos. El agente se quedó vigilando y observó cuando llegó a la referida residencia Sr. Faustino Texidor. Luego llegó también el Sr. Emeterio Caceres.

*Que el día 14 de Septiembre de 1982* resgresó [*sic*] nuevamente al pueblo de Cabo Rojo a prestarle otra vigilancia a la casa #20 de la Calle Hostos. Una vez allí cerca de la plaza observó cuando llegaron juntos el Sr. Arcangel Rodríguez y Faustino Texidor y entraron a la referida casa. Luego llegó [*sic*] también los hermanos Jacinto Vargas Troche y Walter Vargas Troche y entraron a la casa.

Que la referida casa se describe como sigue; Casa de madera y cemento techada de zinc pintada de blanco y balcón en cemento localizada en la calle Hostos #20 de Cabo Rojo. De frente tiene balcón en cemento con una ventana triple de crsstal [*sic*] y puerta de entrada en madera y colinda con la calle Hostos. Por el lado izquierdo colinda con el Col. Torres. Por el lado derecho colinda con la casa #18. (Énfasis suplido.)(³)

## I

De una lectura de dicha declaración resaltan varios hechos: en la misma el agente de la Policía que interviene en

---

(³) Como surge de la Sentencia que se emite en el presente caso, el tribunal de instancia "finalmente desestimó los cargos" que por violación a la Ley de Bolita el Pueblo de Pueblo de Puerto Rico había radicado contra los aquí recurridos al resolver que eran aplicables a los mismos las disposiciones de la antes citada Sec. 1250a del Título 33 de L.P.R.A. Recurre de dicha determinación el honorable Procurador General de Puerto Rico.

la operación es convenientemente denominado "agente investigador"; no obstante ese hecho, la labor que le fuera encomendada fue la de "realizar *investigaciones confidenciales* relacionadas con el juego ilegal dse [*sic*] la bolita", el *7* de septiembre de 1982 es que dicho agente observa la comisión de supuestos actos delictivos por parte de las personas posteriormente acusadas; el agente pudo "observar", en una hoja de papel que estaba en manos de uno de los aquí recurridos, "números de bolita escritos"; que para haber podido observar lo que relata, necesariamente tuvo que estar bien cerca de dicha persona, por lo que resulta lógica la inferencia a los efectos de que el agente se había ganado la confianza de esas personas; y que ninguno de los hechos que observó el *14* de septiembre de 1982 constituye delito público alguno.

Ante esas circunstancias procede que nos preguntemos, ¿si el agente Carlos Vega Castro estaba o no en funciones de agente encubierto? Este Tribunal, en la Sentencia que se emite, entiende que no. Nosotros sostenemos que sí.(⁴)

Es correcto que, en muchas ocasiones, a través de nuestra jurisprudencia hemos considerado al agente encubierto como aquel que *participa activamente* en el acto delictivo ya sea comprando números de bolita o cantidades de drogas narcóticas. Véanse: *Pueblo* v. *Sanabria Pérez,* 113 D.P.R. 694 (1983); *Pueblo* v. *Acosta Acosta,* 107 D.P.R. 68 (1978); *Pueblo* v. *Rivera Burgos,* 106 D.P.R. 528 (1977); *Pueblo* v. *Vega Cruz,* 105 D.P.R. 1 (1976); *Pueblo* v. *Tribunal Superior,* 104 D.P.R. 454 (1975); *Pueblo* v. *Rosario Torres,* 101 D.P.R. 840 (1973).

No es menos cierto, sin embargo, que en otras ocasiones hemos visto al agente encubierto como un *individuo pasivo* que, *como en el caso de autos,* presencia una actividad ilegal de compraventa de números de bolita o drogas narcóticas realizada por terceros en un lugar público a plena vista. Así,

---

(⁴) Respecto a este punto, el honorable Procurador General de Puerto Rico se limita a exponer que el agente en controversia era un *policía regular* que estaba en gestiones confidenciales, lo cual no lo convierte en agente encubierto.

por ejemplo, tenemos el caso de *Pueblo* v. *Soto Zaragoza*, 94 D.P.R. 350, 355–356 (1967), en donde expresamos, en lo pertinente, que:

> En el juicio de la causa la única prueba de cargo consistió en el testimonio *del agente encubierto* Ramón Calderón, quien declaró que había sido destacado en el sector de Villa Palmeras para conseguir prueba por infracciones a la Ley de Bolita desde hacía cerca de dos meses y medio, y que para facilitar su labor, se hacía pasar como mecánico en un garage de los hermanos Sanjurjo, situado a una distancia de cuatro casas de la residencia del coacusado Palacio; que el miércoles 6 de mayo, alrededor de las seis de la tarde se encontraba frente a la residencia de Palacio *y observó* cuando llegó Soto en un automóvil Buick y se detuvo al frente de la casa; que se encontraba como a dos o tres pies del automóvil, pegado a la verja de la casa; que Palacio bajó de su casa y se montó en el automóvil al lado de Soto, en la parte derecha delantera, y estuvieron hablando por espacio de cinco minutos, y al rato Soto sacó un paquete que tenía sobre el asiento y se lo entregó a Palacio; *que al abrir Palacio el paquete pudo observar que eran números de tres cifras con espacio a la derecha y otras cantidades*; que luego Palacio se desmontó y entró a su casa; que a los pocos minutos Soto también entró en la casa en donde permaneció por espacio de quince minutos; que no recuerda los números. (Énfasis suplido.)[5]

El agente en el caso de autos, al igual que el agente del caso de *Soto Zaragoza*, ante, precisamente gracias a la ocultación de su condición de policía logró acceso al lugar específico en donde, según las confidencias recibidas, se realizaban transacciones delictivas. Su apariencia de un ciudadano común y corriente en la plaza de mercado del pueblo de Cabo Rojo fue el recurso que le permitió observar las mencionadas transacciones que obviamente jamás se hubieran efectuado en su presencia de haberse conocido su verdadera identidad.

---

[5] Véanse, en adición: *Pueblo* v. *González del Valle*, 102 D.P.R. 374 (1974); *Pueblo* v. *Palacios Amador*, 96 D.P.R. 695 (1968); *Laureano Maldonado* v. *Tribunal Superior*, 92 D.P.R. 381 (1965); *Pueblo* v. *Tribunal Superior*, 91 D.P.R. 19 (1964); *Pueblo* v. *Luciano Arroyo*, 83 D.P.R. 573 (1961).

Este no es el caso del agente de la Policía de Puerto Rico que vestido de civil observa, *por casualidad,* unos hechos delictivos que ocurren en su presencia.(⁶) Este es el caso en que la Policía de Puerto Rico recibe unas confidencias sobre supuestas transacciones ilegales que están ocurriendo en un lugar específico entre determinadas personas y que, en vista de ello, se envía un agente a bregar confidencialmente con la situación.

Este Tribunal tiene la responsabilidad de evitar que los propósitos de la citada Ley Núm. 54 de 27 de mayo de 1980 sean burlados mediante el uso, por la Policía de Puerto Rico, del simple mote de "agente investigador". Como expresáramos anteriormente, la intención del legislador fue la de garantizar al máximo los derechos de la ciudadanía contra actuaciones inescrupulosas de agentes de la Policía de Puerto Rico. El propósito de la ley fue el regular *"determinado patrón de conducta"* de los agentes de la Policía, independientemente de que se llamen agentes encubiertos o agentes investigadores o agentes regulares.

## II

Rechazamos igualmente, por último, el argumento de que la convicción de los aquí recurridos no fue a base de la declaración jurada prestada por el agente y sí "a base de los hallazgos del allanamiento".

En nuestra opinión, la adopción de dicha teoría constituye un paso de retroceso en nuestra jurisprudencia, por cuanto entrañaría el permitir el acceso a los tribunales de una evidencia que es el fruto de un testimonio que por mandato de ley es inadmisible. Véanse: *Wong Sun* v. *United States,* 371 U.S. 471 (1963); *Silverthorne Lumber Co.* v. *United States,* 251 U.S. 385 (1920); *Pueblo* v. *Lastra Sáez,* 93 D.P.R. 876 (1967) y *Pueblo* v. *Rodríguez Rivera,* 91 D.P.R. 456 (1964).

---

(⁶) En cuya situación el agente obviamente no actúa como agente encubierto.

## III

Habiendo actuado el agente Carlos Vega Castro, en nuestra opinión, como un agente encubierto el día 7 de septiembre de 1982 [7] venía obligado, a tenor con las disposiciones de la Sec. 1250a del Título 33 de L.P.R.A., a prestar una declaración jurada dentro de las 120 horas de haber ocurrido los hechos. Puesto que no se demostró justa causa por la cual ello no se hizo, su testimonio no era admisible en un tribunal de justicia, por lo que no podía tampoco servir de base para la expedición de una orden de allanamiento.

Por las razones expresadas, *confirmaría* la resolución dictada por el tribunal de instancia.

---

[7] Obsérvese, en relación con el día 14 de septiembre de 1982, que el agente de la Policía no observa hecho alguno que tienda a demostrar la posible comisión de un delito público.