EL PUEBLO DE PUERTO RICO, peticionario, *v.* VIRGINIA RUIZ NEGRÓN y JOSÉ GONZÁLEZ SOLÍS, acusados y recurridos.

*Número:* O-82-165 *Resuelto:* 26 de mayo de 1982

*Justo Gorbea Varona, Procurador General Interino; Lorraine Riefkohl, Procuradora General Auxiliar*, abogados del peticionario; *Mario A. Rodríguez* y *Mario A. Rodríguez Torres*, abogados de los recurridos.

**PER CURIAM:** Se interesa mediante la petición de *certiorari* de epígrafe que dejemos sin efecto una resolución del Tribunal Superior, Sala de Bayamón, que ordenó la desestimación de acusaciones contra los recurridos por infracción de.la Ley de Bolita.[1] Dicha resolución fue

[1] Ley Núm. 220 de 15 de mayo de 1948 (33 L.P.R.A. secs. 1247–1257).

promovida por moción de la Defensa, que alegó que la declaración jurada del agente encubierto que dio base a las acusaciones no cumple lo requerido por la Sec. 4A de dicha ley[2] ni con la jurisprudencia de este Tribunal sobre el particular. Examinada la referida declaración jurada en atención a la citada disposición de la ley y los criterios establecidos en *Pueblo v. Almodóvar*, 109 D.P.R. 117 (1979), expedimos resolución el 7 de abril de 1982 en que concedimos término a los recurridos para mostrar causa por la cual no deberíamos expedir el auto solicitado y dejar sin efecto la resolución del tribunal de instancia. Los recurridos han comparecido por escrito.

En *Pueblo v. Almodóvar*, supra, luego de resumir nuestros pronunciamientos en una línea de casos que se inició con *Pueblo v. Seda*, 82 D.P.R. 719 (1961), y continuó con *Pueblo v. Luciano Arroyo*, 83 D.P.R. 573 (1961), *Pueblo v. Ayala Ruiz*, 93 D.P.R. 704 (1966), *Pueblo v. Soto Zaragoza*, 94 D.P.R. 350 (1967), *Pueblo v. Rosario Torres*, 101 D.P.R. 840 (1973), y *Pueblo v. González del Valle*, 102 D.P.R. 374 (1974), reiteramos nuestra preocupación por el uso a solas del testimonio de agentes encubiertos en la persecución de casos por infracción de la Ley de Bolita y por el uso y tráfico de substancias controladas, y fijamos pautas que quedaron finalmente incorporadas a la Ley de Bolita, al adicionársele la Sec. 4A por Ley Núm. 54 de 27 de mayo de 1980. Dicha Sec. 4A dispone:

Sección 4A. *Agentes encubiertos, declaraciones juradas, contenido.*

Toda persona que intervenga o participe como agente encubierto en cualquier transacción o venta de material relacionado con los juegos generalmente conocidos como "Bolita", "Bolipool", combinaciones clandestinas relacionadas con los *Pools* o bancas de los hipódromos de Puerto Rico y loterías clandestinas; o que sorprendiere a cualquier persona portando o conduciendo o que tuviere en su poder en

[2] 33 L.P.R.A. sec. 1250a.

cualquier concepto, cualquier papeleta, billete, *ticket*, libreta, lista de números o letras, boletos o implementos que pudieren usarse en dichos juegos ilegales bajo las disposiciones de esta ley, *deberá prestar ante un fiscal, dentro de un término no mayor de 120 horas siguientes a haberse consumado dicha transacción o venta o cualquiera de las acciones delictivas antes mencionadas, una declaración jurada sobre su participación en la misma y los hechos pertinentes a ésta, incluyendo el término durante el cual se extendió la investigación, el área cubierta, los resultados obtenidos y las causas presentadas contra otros infractores atrapados en la redada, así como la identidad de otras personas que realizaron transacciones con el acusado observadas por dicho agente encubierto.* El término de 120 horas aquí establecido será de estricto cumplimiento, excepto que se demuestre justa causa para una demora en someter la declaración jurada dentro del término antes indicado.

Cuando el Tribunal determinare en la vista preliminar que dicha declaración jurada no fue prestada, o que habiéndose prestado fuera del término de 120 horas no hubo justa causa para la dilación, ni dicha declaración jurada ni el testimonio del agente encubierto podrán ser presentados en evidencia.

En la determinación de justa causa se tomará en consideración, entre otros factores, el que la investigación no hubiere concluido dentro del término antes indicado. (Énfasis suplido.)

 En el presente caso la declaración jurada del agente cumple substancialmente con la transcrita disposición. En aras de economía de espacio la transcribimos al margen.(³) No es necesario hacer un análisis de todos sus

---

(³) *"QUE MI NOMBRE Y DEMAS CIRCUNSTANCIAS PERSONALES SON LAS ARRIBA INDICADAS:*

"Que trabajo para la Policía de Puerto Rico, en calidad de Agénte Encubierto, adscrito à la División Control Vicio del Area Metropolitana. Fuí asignado para el mes de noviembre de 1980, a realizar investigaciones confidenciales sobre Juegos Ilegales Bolita, Quinielas Clandestinas y otros delitos, en los pueblos de Cataño, Toa Baja y Dorado y sus sectores. En los cuales ya he realizado 5 transacciones, dos de Bolita[,] 2 de quinielas clandestinas y una de exacta clandestina. Con los individuos DOÑA GEÑA, PABLITO, MILLO GALAN, TITO Y REYNALDO. Para el martes 17 de febrero de 1981 y en horas de la tarde me encontraba en

detalles. Su lectura basta para comprobar que fue prestada dentro del término establecido en la transcrita Sec.
4A, y que expresa cuándo se inició la labor investigativa
del agente, el área cubierta, su participación, las personas
intervenidas y las infracciones cometidas. No describe a
cada infractor ni da su nombre completo, pero les señala
por sus nombres conocidos de manera que su identidad
pueda averiguarse.

---

Levittown en el parking de el Supermercado Co-op frente al Paseo Amapola
dándole seguimiento a un individuo C/P JOSE de tez trigueña, pelo canoso y un
poco calvo, usa lentes, 150 libras de peso aproximadamente, 5 pies 6 pulgadas
aproximadamente, 58 años de edad aproximadamente vistiendo pantalón color
guayaba, camisa rojo claro, y zapatos brown y usando lentes claro. `Este
individuo por conocimiento propio se dedica a recoger listas a las personas que se
dedican al juego ilegal de la Bolita. Debido a que en mi presencia en varias
ocasiones ha ido al negocio de una Sra. C/P DOÑA GEÑA con la cual yo tengo
una transacción de quiniela clandestina y [h]a recogido dicha lista. Este día y en
la fecha arriba indicada, el Sr. C/P JOSE, a las 4:50 P.M. y frente a su casa que
es en la dirección arriba indicada se montó en un carro Datsun modelo 1979,
color brown obscuro, tablilla 62 x 732 y se dirigió hacia el pueblo de CATA
ÑO[. Y]o le dí seguimiento hasta que él se detuvo en la Calle Tren y yo seguí hasta
El Negocio de Doña Geña que está ubicado en la Calle Destino del Pueblo de
Cataño. Esta Sra. C/P DOÑA GEÑA es de tez blanca, pelo corto y canoso, 5 pies
2 pulgadas de estatura aproximadamente, 138 libras de peso aproximadamente,
60 años de edad aproximadamente. Vistiendo traje brown con cuadros blancos y
chancletas negras. Cuando yo estaba en dicho negocio al cabo de media hora me
dirigí hasta la parte de atrás de dicho negocio frente al baño, donde hay un
pequeño balcón y allí se encontraba Doña Geña con un papel color blanco de
aproximadamente 5 pulgadas de ancho x 6 de largo, donde [había] varios
números apuntados con cantidad de dinero al lado, entre los cuales pude
observar el 037 con $1.00, 290 con 75¢ y el 409 con $1.00[. Y]o llegué y la saludé
y le dije DOÑA GEÑA apúntame el 474 con $1.00 para [ver] si la suerte
cambia[;] ella apuntó el número en la misma lista arriba indicada y cogió el
dólar[. L]a hora exacta de dicha transacción fue a las 6:10 P.M. Luego de ahí
pasé a la parte posterior del Negocio a jugar en una máquina de pinball. Como a
las 6:35 P.M. llegó el individuo C/P JOSE en el carro arriba descrito y se paró
frente a dicho negocio mirando hacia los alrededores[. A]l cabo de 3 minutos
entró al Negocio y se dirigió hacia el pequeño balcón en la parte de atrás de
dicho negocio. Después que él (JOSE) entró yo me fuí como que iba para el baño
y en ese momento DOÑA GEÑA le hacía entrega de la lista en la cual ella había
apuntado el número que yo le transé y él se la echó al bolsillo del pantalón
(JOSE)[, y] se quedó hablando con DOÑA GEÑA. Luego yo quedé cerca sin
perderlo de vista desde que ella le entregó la lista y escuché cuando él le dijo a
DOÑA GEÑA 'bueno nos vemos mañana que yo voy derechito a casa a cotejar
esto'. Yo salí detrás de él y me monté en mi carro, cuando el individuo C/P JOSE
se marchó en el carro llevándose consigo dicho material ilegal del juego de la

En cuanto a las infracciones imputadas a los recurridos, la declaración es prolija en detalles sobre sus descripciones físicas, cómo vestían, lugares específicos en que ocurrieron, vehículo envuelto y actuaciones del agente. El lugar en que ocurren las transacciones es la parte posterior de un negocio "frente al baño, donde hay un pequeño balcón", y la transacción imputada es observada por el agente cuando simuló que iba para el baño. No puede decirse que es ésta una declaración estereotipada y descarnada, ni que se tratara de una transacción a plena vista. Es de esperarse que en el desempeño de una misión confidencial, el agente, al introducirse entre los miembros de las subculturas del crimen, se gane su confianza. En este caso, él no le era extraño a Doña Geña y precisamente había hecho una transacción de bolita con ella momentos antes de la transacción observada entre ella y José.

■ Antes de disponer del presente recurso nos vemos precisados a referirnos a la actitud y expresiones de los abogados de los recurridos, Lcdo. Mario A. Rodríguez y Lcdo. Mario A. Rodríguez Torres, contenidas en su escrito sobre mostración de causa. Ningún argumento jurídico oponen a la bien fundamentada petición de *certiorari*. En un evidente desahogo de encono personal motivado por la intimación en nuestro requerimiento de mostrar causa de

Bolita. Yo seguí detrás de él manteniendo una distancia prudente y le di seguimiento hasta su casa. Que está ubicada en el número 2254 del Paseo Amapola, Urb. Levittown, Toa Baja. Luego dicho Sr. C/P JOSE se bajó del carro y se metió a su casa. Al cabo de 5 minutos al ver que éste no salía pasé por frente de su casa pero no lo ví ya que éste se encontraba en el interior de su casa, entonces yo me dirigí hasta la plaza de Cataño y desde un teléfono público le comuniqué a mi Agente de Contacto de la transacción realizada por mí. En dicho sector yo me hago pasar como pensionado del Ejército de los Estados Unidos. Esta transacción realizada por mí era para ser confrontada con las 3 últimas cifras del Primer Premio de la Lotería de Puerto Rico, a celebrarse el miércoles 18 de febrero de 1981.

"QUE LO ANTES DECLARADO ES LA VERDAD Y NADA MAS QUE LA VERDAD Y PARA QUE ASI CONSTE LO JURO:"

(La declaración aparece jurada y suscrita ante el fiscal el 18 de febrero de 1981.)

haber acogido como válidos los argumentos de la petición, dan por sometido el recurso y expresan que la concesión del término para mostrar causa es una manifestación de "ritualismo procesal", que la oportunidad de ser oídos concedida es "un ejercicio abstracto", y que argumentar su moción sería "un ejercicio fútil". Terminan señalando: "Que dan por sometida la cuestión, no sin antes consignar su onda [*sic*] preocupación por este tipo de manifestación del más alto Tribunal de nuestro país, que vulnera según nuestro entender, los derechos de los acusados."

Estas desafortunadas expresiones de velada crítica a este Tribunal no están a la altura que es de esperarse de quienes deben siempre honrarse a sí mismos como defensores del buen nombre y prestigio de los tribunales de justicia, de cuyo sistema son parte integrante. Los arranques pasionales jamás deben ser armas de lidia en la contienda judicial, con mayor razón si carecen de toda justificación. Se previene a los mencionados abogados contra inobservancia de estos principios. Véase el Canon 9 del Código de Ética Profesional.

Durante varios años hemos estado utilizando como medio para agilizar los procedimientos ante este Tribunal, la expedición de resoluciones que se ha dado en llamar órdenes para mostrar causa. Para evitar el trámite más complicado y largo de expedir un auto de revisión o de *certiorari*, en muchas ocasiones requerimos de la parte recurrida que muestre causa por la cual no debamos tomar determinado curso de acción. Lo hacemos cuando dicha parte no ha comparecido a oponerse a la petición, en ánimo de ofrecerle oportunidad de exponer ante nos los argumentos jurídicos que pueda tener contra los expresados en la petición. El curso de acción intimado no es necesariamente el criterio del Tribunal, como lo demuestran, para ejemplo, las estadísticas que a continuación se exponen.

Durante el presente término de sesiones de este Tribunal, que comenzó el primero de octubre próximo pasado, y

hasta el 15 de abril del año en curso —un período de seis meses y medio— hemos expedido un total de 207 órdenes para mostrar causa. Ese total se redujo a 202 por desistimientos voluntarios de los recurrentes. Para la indicada fecha —15 de abril— había 98 pendientes de contestación. De los 104 restantes, en solamente 65 casos se revocaron las resoluciones o sentencias recurridas. De los restantes 39, 15 se resolvieron por resoluciones en que se denegó la expedición del auto, 10 se resolvieron por sentencias u opiniones en que se confirmó la sentencia o resolución recurrida, y en los restantes 14 se modificó la sentencia recurrida. Dicho de otro modo, en 25 de 104 casos —un 24 por ciento— quedaron inalteradas las sentencias en que requerimos mostrar causa para no revocarlas o modificarlas, y en 10 de los restantes casos las sentencias o resoluciones recurridas no fueron revocadas y sí modificadas.

Cabe señalar que en algunos de los casos en que revocamos, luego de requerir mostración de causa, la parte recurrida no compareció a oponerse, dando así por bueno el criterio intimado. Y procede señalar, además, que no siempre fueron unánimes las decisiones de este Tribunal que modificaron o revocaron sentencias o resoluciones recurridas en que requerimos mostración de causa.

Mediante este procedimiento ha logrado este Tribunal que en muchos casos, recursos que de ordinario hubiesen tomado muchos meses en resolverse, se han podido resolver en pocas semanas. Este procedimiento de mostración de causa es parte de nuestro empeño de acortar y simplificar los trámites y lograr una pronta solución de los casos. Otros medios que hemos adoptado, tendientes al mismo fin, son, para ejemplos, dispensar el requisito de largas, costosas e innecesarias transcripciones, sustituyéndolas por exposiciones narrativas de la prueba;[4] y resolver sin

---

[4] Véase *Pueblo* v. *Casiano Vélez*, 105 D.P.R. 33 (1976), y la tabla en la página 48 en dicho tomo.

dilación, bajo la Regla 50 de nuestro Reglamento, casos que no ameritan ulteriores trámites. Este empeño está a tono con el deseo de todo litigante de que su caso se resuelva prontamente. En ello tiene particular interés la profesión jurídica en general. Valga aclarar que el empleo de estos medios para agilizar los procedimientos ante este Tribunal en ninguna forma menoscaba la preeminente función de hacer justicia; al contrario, la complementa, pues justicia tardía no es necesariamente la mejor justicia.

Por lo expresado, *se expedirá el auto de certiorari, se dejará sin efecto la resolución del Tribunal Superior, Sala de Bayamón, que desestimó las acusaciones contra los aquí recurridos, y se dispondrá que continúen los trámites ante dicha sala hasta la final disposición de las causas que se les imputan.*