
Versión para imprimir

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Hiram Meléndez Rivera<br><br>Recurrido<br><br>v.<br><br>Hon. Julio Alicea Vasallo,<br>Director Ejecutivo de la ACAA; et als.<br><br>Peticionarios | Certiorari<br><br>2011 TSPR 31<br><br>181 DPR \_\_\_\_ |

Número del Caso: CC - 2011 - 137

Fecha: 10 de marzo de 2011

Tribunal de Apelaciones:

Región Judicial de San Juan Panel I II

Juez Ponente:

Hon. Erik Ramírez Nazario

Abogado de la Parte Peticionaria

Lcdo. Eric Ronda del Toro

Abogad o de la Parte Recurrida:

Lcd o. David Noriega Rodríguez

Materia: Parte Indispensable y Publicidad a Documentos en Poder de la Oficina del FEI

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisione s del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Hiram Meléndez Rivera

    Recurrido

    v.

Hon. Julio Alicea Vasallo,
Director Ejecutivo de la
ACAA; *et als.*

    Peticionarios

*Certiorari*

CC-2011-0137

RESOLUCIÓN

En San Juan, Puerto Rico, a 10 de marzo de 2011.

Luego de examinar la moción urgente solicitando auxilio de jurisdicción y la petición de *certiorari*, ambas presentadas por los peticionarios, se declara Con Lugar la referida moción y se paralizan los efectos de la sentencia dictada por el Tribunal de Apelaciones el 15 de febrero de 2011 en el caso de epígrafe.

Además, se le concede a la parte recurrida un término de 20 días, a contarse desde la notificación de esta resolución, para que muestre causa por la cual no se deba expedir la petición de *certiorari* y revocar o modificar la referida sentencia.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton denegaría el recurso presentado por entender que la sentencia recurrida es esencialmente correcta. La Jueza Asociada señora Fiol Matta proveerían No Ha Lugar. La Juez Asociada señora Rodríguez Rodríguez emitió un voto particular disidente. El Juez Asociado Rivera García emitió un voto particular.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Hiram Meléndez Rivera<br><br>    Recurrido<br><br>        v.<br><br>Hon. Julio Alicea Vasallo,<br>como Director Ejecutivo de la<br>ACAA; Zanarys Sullivan<br>Cartagena, como Directora de<br>la Oficina de Auditoría de la<br>ACAA; ACAA<br><br>    Peticionaria | CC-2011-137 |

Voto particular disidente emitido por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 10 de marzo de 2011

Discrepo de la determinación tomada por el Tribunal en el día de hoy en este caso, considero que la decisión del Tribunal de Apelaciones es correcta y es lo que manda el estado de derecho vigente. A mi juicio, el procedimiento seguido en este caso por la Administración de Compensación por Accidentes es insostenible y contrario a lo que ordena su propia reglamentación. Véase discusión, *infra*. Siendo así, debo ejercer hoy, como lo haré siempre, mi derecho a disentir. Lo contrario sería abdicar a lo más preciado de un juez: su criterio propio y los designios de su conciencia.

Los hechos en este caso son sencillos y sobre lo fundamental, no hay controversia. Veamos.

I

El demandante-recurrido, licenciado Hiram Meléndez Rivera, fue director ejecutivo de la Administración de Compensación por Accidentes (ACAA) de enero de 2005 a enero

2009. El Sr. Julio Alicea Vasallo, fue su sucesor y en la actualidad funge como tal. Luego del cese en funciones del licenciado Meléndez y nombrado al puesto el señor Alicea Vasallo, la ACAA realizó una auditoría interna sobre una tarjeta de crédito expedida para el uso de la Oficina del Director Ejecutivo de la ACAA. La auditoría cubrió el periodo de tiempo durante el cual el licenciado Meléndez Rivera fue su director. Como resultado de la auditoría se hicieron ciertos hallazgos sobre un alegado mal uso de la tarjeta de crédito por el licenciado Meléndez. El informe preliminar como sus hallazgos no se discutieron con el licenciado Meléndez Rivera en ningún momento. La ACAA tampoco le entregó copia del referido informe.

El informe preparado por la Oficina de Auditoría de la ACAA se refirió al Departamento de Justicia quien, a su vez, lo remitió al Fiscal Especial Independiente. Éste designó un fiscal para evaluar el informe y actuar conformo determinara correcto.

Así las cosas, el licenciado Meléndez Rivera, amparándose en las disposiciones del "Manual de Políticas y Procedimientos del Departamento de Auditoría Interna" de junio de 2002 (el "Manual" o "Manual de Auditoría" o "el Reglamento"), acudió ante el Tribunal de Primera Instancia con un recurso de *mandamus* y solicitó que se le entregara copia del informe de auditoría preparado por la Oficina de Auditoría de la ACAA. Indicó que el Manual de la agencia ordena que los hallazgos de una auditoría se discutan con la parte afectada, y manda que se le entregue a la parte

auditada copia de los hallazgos y del informe preliminar que se prepare. En la solicitud de *mandamus* se incluyó como demandados al actual director ejecutivo de la agencia, a la señora Zanarys Sullivan Cartagena, directora de la Oficina de Auditoría de la ACAA y a la propia agencia.

Los demandados, aquí peticionarios, alegaron ante el tribunal de instancia y luego en el Tribunal de Apelaciones, que no era necesario discutir el documento con el ex director ejecutivo de la agencia porque ya éste no trabajaba para la ACAA. Además, indicaron que la ACAA remitió su informe con sus hallazgos al Departamento de Justicia y éste a su vez hizo un referido a la Oficina del Fiscal Especial Independiente (FEI), quien está investigando los hallazgos del informe de auditoría. En virtud de ello, y habida cuenta que los documentos del FEI son confidenciales por disposición de su ley habilitadora, el tribunal no puede ordenar su entrega al licenciado Meléndez. Por otro lado, plantearon que el FEI es parte indispensable en este caso y no fue demandado.

Luego de celebrar una vista argumentativa, el Tribunal de Primera Instancia dictó sentencia y concluyó que el FEI no podía catalogarse como parte indispensable en este caso pues de lo que aquí se trataba era de si la ACAA cumplió con su reglamentación sobre los procesos que debe seguir para llevar a cabo una auditoría interna. En relación con esto último concluyó, que la ACAA no cumplió con el procedimiento que establece su propia reglamentación por lo que le ordenó que le notificase al licenciado Meléndez copia del informe así

como que se le permitiera contestarlo.  El tribunal le indicó a la ACAA que ésta debía cumplir con sus disposiciones reglamentarias.

Inconforme, la ACAA acudió al Tribunal de Apelaciones quien confirmó el dictamen apelado.  La ACAA acude ahora ante este Tribunal y presenta los mismos argumentos que los planteados ante los foros inferiores.  Sorprendentemente a mi juicio, la mayoría hoy le ordena al recurrido que se exprese sobre el recurso presentado.  Lo cierto es que la norma aplicable a este caso es clara por lo que considero que lo correcto en derecho era denegar el recurso traído ante nuestra consideración.

II

Los procesos de auditoría interna de la ACAA se rigen por un reglamento de la agencia que se titula, "Manual de Políticas y Procedimientos del Departamento de Auditoría Interna" de junio de 2002.  El propósito del Manual es "provee[r] guías y establecer los procedimientos y requisitos respecto a la organización ejecución y administración", del Departamento de Auditoría.

En el capítulo sobre las políticas de procedimiento, capítulo 200, en la parte que se relaciona con la "revisión, reconocimiento y respuesta a los Informes de Auditoría Interna", secs. 203.20-203.24, se dispone lo siguiente:

> .20 **Es la política de auditoría interna tratar de llegar a un acuerdo con el personal concernido en relación con la corrección de los hechos envueltos en los hallazgos de la auditoría, antes de la distribución del Informe Final.** Cuando fuere necesario, la acción correctiva de tales hechos deberá ser establecida e incluida en el Informe. **El**

**equipo de auditores podría trabajar en conjunto con la unidad auditada para buscar juntos la menor solución a las deficiencias señaladas durante la auditoría.**

.21 Para asegurarse de que tales acuerdos se logren en relación con los hechos, los resultados a ser incluidos en el informe **deberán ser discutidos con el jefe de la unidad auditada o con su representante, a quien se le suministrará una copia previamente a su distribución.**

.22 Una vez el Director de Auditoría Interna considere que el informe de auditoría está conforme con las circunstancias, deberá llevarse a cabo la distribución final del informe. **Deberán ser entregadas copias del informe al personal de la unidad auditada. Si las respuestas (acción tomada o planificada y la fecha estimada de un su implementación) a las recomendaciones no han sido incluidas en el informe final, el Director trabajará con el jefe de la unidad auditada para llegar a una respuesta adecuada a los puntos señalados en la auditoría.** Estos planes de acción serán entregados a los recipiendarios originales del informe.

.23 El Director de Auditoría Interna es el responsable de evaluar las respuestas de la unidad auditada. **El Departamento de Auditoría Interna trabajará con la unidad auditada y con la alta gerencia para resolver cualquier respuesta que no sea adecuada.**

.24 Los informes de auditoria (sic) son confidenciales y, por lo tanto, su distribución es limitada. No podrán ser reproducidos o entregados a otros sin el permiso específico del Director de Auditoría Interna. (Énfasis nuestro.)

El Reglamento comienza señalando que la agencia ha de procurar "llegar a un acuerdo con el personal concernido en relación con la corrección de los hechos envueltos en los hallazgos de la auditoría, antes de la distribución del Informe Final." En otras palabras, el Manual de Auditoría indica claramente, desde su comienzo, que los hallazgos de una auditoría deben compartirse con lo que llama "el personal concernido." La labor conjunta entre la oficina de auditoría

y la unidad auditada permite tomar de forma coordinada las medidas correctivas necesarias para atender los señalamientos hechos.

Específicamente, el reglamento ordena que "los resultados a ser incluidos en el informe **deberán ser discutidos con el jefe de la unidad auditada o con su representante, a quien se le suministrará una copia previamente a su distribución."** Obsérvese que el lenguaje es mandatorio, no es optativo. Es evidente que ésta es la mejor forma de lograr el objetivo de la auditoría interna de atender las deficiencias directamente con la parte afectada para que se tomen las medidas correctivas que correspondan. No hay duda que la discusión de unos hallazgos preliminares con la parte afectada le permite a ésta aclarar, objetar o comentar el hallazgo correspondiente previo a que se presente el informe final. El Manual también contempla que se incorporen al informe final que rinda la oficina de auditoría interna, las respuestas ofrecidas por la parte afectada sobre los señalamientos hechos. Del Reglamento antes mencionado queda claro también que la parte afectada tiene derecho no tan sólo a recibir copia del informe cuando esté en una fase preliminar, sino también cuando se emita de forma final.

En este caso no hay controversia de que al licenciado Meléndez Rivera, parte afectada por la auditoría, la ACAA **no le notificó los resultados o hallazgos de su auditoría ni los discutió con él o le entregó copia del informe preparado. Es decir, en ningún momento la ACAA discutió con el licenciado Meléndez nada del contenido del informe realizado.** Éste por

lo tanto no tuvo oportunidad de examinar el referido informe para discutirlo, comentarlo o cuestionar su contenido, o impugnar los hechos en que se apoyan las conclusiones. El proceso seguido en la auditoría objeto de este caso se apartó por completo del procedimiento establecido por la propia agencia para estos propósitos.

En infinidad de ocasiones hemos indicado que una vez una agencia adopta normas y procedimientos para guiar sus procesos, éstos obligan a su observancia y riguroso cumplimiento, pues esa regla o norma opera como límite al ejercicio de su discreción. *Buono Correa v. Vélez Arocho*, 2009 TSPR 166; *Com. Vec. Pro-Mej., Inc. v. J.P.*, 147 D.P.R. 750, 764-65 (1999); *T-Jac, Inc. v. Caguas Centrum Limited Partership*, 148 D.P.R. 70, 81 (1999). En ese tenor, hemos sido enfáticos en que una vez una agencia promulga una norma reglamentaria "debe cumplirla y aplicarla en la manera en que está concebida, sirviendo siempre a los propósitos, los objetivos y la política publica que la forjaron". *T-JAC, Inc. v. Caguas Centrum Limited, supra*, pag. 81. La agencia no tiene discreción para determinar qué reglamento cumple o qué disposición reglamentaria puede obviar o ignorar. *García Cabán v. UPR*, 120 DPR 167 (1987).

Permitir que una agencia administrativa haga caso omiso de la reglamentación que aprobó y actúe a su margen, implica dotar a estos organismos con discreción ilimitada, lo cual hemos rechazado de forma consistente. Los entes administrativos no pueden actuar de manera arbitraria o caprichosa "al aplicar sus reglamentos a casos particulares …

se requiere que las decisiones administrativas sean consecuentes al aplicar los reglamentos." *Asociación de Farmacias v. Departamento de Salud*, 156 DPR 105, 136-137 (2002). El ejercicio de poderes administrativos a base de consideraciones caso por caso, no está permitido y es contrario a las normas más básicas de debido proceso de ley y el principio de que los procesos deben ser fundamentalmente justos ("fundamental fairness").

Es claro que el Reglamento de la ACAA que gobierna el proceso de auditoría interna **exige** que los hallazgos preliminares se discutan con la parte afectada y se le entregue a ésta copia del informe preliminar. Es claro también que ello no ocurrió en este caso. Por lo tanto, la respuesta obligada, pensaría yo, es evidente: que se ordene la entrega de copia del informe preliminar preparado. Eso fue precisamente lo que ocurrió en este caso. Sólo de esta forma se cumple con el mandato constitucional de que las actuaciones de una agencia administrativas sean cónsonas con el debido proceso de ley. De lo contrario estaríamos ante un procedimiento ajeno a nuestro derecho administrativo donde se vulneran los principios más básicos del debido proceso de ley.

De otra parte, la forma más eficiente y eficaz de asegurarse de que un informe es imparcial es sin duda que el funcionario o ex funcionario de la unidad auditada revise los hallazgos que se le envían y someta sus comentarios, previo a que ese informe sea final o se actúe sobre él. El

procedimiento es justo solo si la parte afectada ha podido enfrentarse a los señalamientos que se le han hecho.[1]

El argumento de la parte peticionaria de que no tiene que discutir los resultados de su auditoría con el licenciado Meléndez porque éste no es ya empleado de la agencia es, como poco, frívolo y no amerita mayor discusión o consideración. Igualmente de improcedente son los argumentos sobre falta de parte indispensable y de confidencialidad del informe. El hecho de que el informe se le remitiese al Departamento de Justicia y luego al FEI y que de esta forma, suponemos y "por accesión" esté cubierto con el manto de confidencialidad de los expedientes del FEI es igualmente equivocado. Aquí se ha solicitado copia de un informe que el reglamento que lo regula dice expresamente que la parte afectada tendrá derecho a acceso a ese documento y a obtener copia. De eso trata esta controversia y es en virtud de ello que se solicita, y es en virtud de ello que hay que entregarlos.

El derecho aplicable, por lo menos hasta hoy, es claro. Es por ello que disiento.


                        Anabelle Rodríguez Rodríguez
                              Juez Asociada


---

[1] La ACAA puede, evidentemente, remitir sus hallazgos finales a las agencias pertinentes. Pero eso es un proceso separado del asunto que hoy tratamos que es, si la ACAA actuó en este asunto al margen de su reglamento. Lo que si debe quedar claro es que la ACAA no puede utilizar el referido hecho como subterfugio para incumplir con su propia reglamentación.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Hiram Meléndez Rivera

    Recurrido

      v.

Julio Alicea Vasallo,
Director Ejecutivo de la
 ACAA; *et als.*

 Peticionarios

*Certiorari*

CC-2011-0137

Voto Particular emitido por el Juez Asociado señor Rivera García

En San Juan, Puerto Rico, a 10 de marzo de 2011.

Nos sorprenden las expresiones vertidas por la Juez Asociada señora Rodríguez Rodríguez en su Voto Particular Disidente. Estas, aparte de ser en destiempo, constituyen un craso error que incide sobre la metodología adjudicativa que rige nuestro ordenamiento jurídico. Su razonamiento, más bien, consiste en un ejercicio especulativo que pretende vaticinar, sobre la palestra de un vacío, la posición aún por conocer de este Tribunal. En vista de ello, nos vemos precisados a pronunciarnos con vehemencia ante el infausto análisis.

CC-2011-0137

En primer lugar, aun cuando el mecanismo procesal de "orden de mostrar causa" se ha utilizado para advertir que *prima facie* el dictamen impugnado puede ser errado, ello no implica de forma alguna que su uso constituya "la expresión de un criterio firme y arraigado de que el dictamen recurrido es efectivamente erróneo". (Énfasis suplido). H. Sánchez Martínez, <u>Práctica jurídica de Puerto Rico: derecho procesal apelativo</u>, San Juan, Ed. Lexis Nexis, 2001, sec. 3304, págs. 577-578. Al contrario, como bien señalamos en <u>Pueblo v. Ruiz Negrón</u>, 113 D.P.R. 17, 22 (1982), "el curso de acción intimado no es necesariamente el criterio del Tribunal". En ese contexto, particularizamos que

> Durante varios años hemos estado utilizando como medio para agilizar los procedimientos ante este Tribunal, la expedición de resoluciones que se [han dado a conocer como] órdenes para mostrar causa. Para evitar el trámite más complicado y largo de expedir un auto de revisión o de *certiorari*, en muchas ocasiones requerimos de la parte recurrida que muestre causa por la cual no debamos tomar determinado curso de acción. Lo hacemos cuando dicha parte no ha comparecido a oponerse a la petición, en ánimo de ofrecerle oportunidad de exponer ante nos los argumentos jurídicos que pueda tener contra los expresados en la petición.[2] Íd.

---

[2] En <u>Pueblo v. Ruiz Negrón</u>, 113 D.P.R. 17, 23-24 (1982), añadimos que:

> "Mediante este procedimiento ha logrado este Tribunal que en muchos casos, recursos que de ordinario hubiesen tomado muchos meses en resolverse, se han podido resolver en pocas semanas. Este procedimiento de mostración de causa es parte de nuestro empeño de acortar y simplificar los trámites y lograr una pronta solución de los casos. Otros medios que hemos adoptado, tendientes al mismo fin, son, para ejemplos, dispensar el requisito de largas, costosas e innecesarias transcripciones, sustituyéndolas por exposiciones narrativas de la prueba; y resolver sin dilación, bajo la Regla 50 de nuestro Reglamento, casos que no ameritan ulteriores trámites. Este empeño está a tono con el deseo de todo litigante de que su caso se

Cónsono con lo anterior, el inciso (a) de la Regla 46 del Reglamento de este Tribunal provee para que esta Curia le ordene a las partes mostrar causa por la cual no se deba expedir un auto y tomar determinado curso de acción. 4 L.P.R.A. Ap. XXI-A, R.46(a). Ello no implica automáticamente –contrario a lo sugerido por la Juez Asociada señora Rodríguez Rodríguez– una inclinación invariable a revocar el dictamen recurrido. Más bien, el emitir una orden de mostrar causa pretende la ponderación detenida de los argumentos vertidos por todas las partes y no sólo los esbozados por la que comparece inicialmente ante este foro.

Así, pues, una vez ante nos todos los planteamientos de las partes involucradas, el Tribunal –como ente colegiado– podrá formar responsablemente su posición al respecto. Dicha determinación, según claramente establecido en el inciso (c) de la Regla 46 de nuestro Reglamento, podrá consistir en la denegación del recurso; la expedición del auto con el fin de revocar, modificar o confirmar la sentencia o resolución recurrida; entre otras. Véase 4 L.P.R.A. Ap. XXI-A, R. 46(c).

En segundo lugar, las implicaciones prácticas del Voto Particular Disidente contradicen sus propios

resuelva prontamente. En ello tiene particular interés la profesión jurídica en general. **Valga aclarar que el empleo de estos medios para agilizar los procedimientos ante este Tribunal en ninguna forma menoscaba la preeminente función de hacer justicia; al contrario, la complementa, pues justicia tardía no es necesariamente la mejor justicia**".

fundamentos. Por un lado, el referido voto pretende vindicar el debido proceso de ley del recurrido al argumentar que éste es acreedor de determinados derechos como parte de un trámite administrativo. No obstante, sus expresiones -a la misma vez- le coartan el mismo derecho al peticionario. Ello, al adelantar su criterio sobre el asunto de autos, privándole así al peticionario de su derecho a un juzgador imparcial que adjudique la controversia presentada sin una visión sesgada y desprovista de todos los argumentos pertinentes. Hernández v. Srio., 164 D.P.R. 390, 395-396 (2005).

En fin, las expresiones contenidas en el voto disidente no van más allá del plano de la especulación y tan sólo pretende "adivinar" la decisión última que este Tribunal tomará en su día sobre el caso de autos. Al así actuar, incurre en un grave desacierto al prejuzgar la controversia ante nos. Debo puntualizar que de la misma manera que la Juez Asociada Rodríguez Rodríguez al examinar la posición de la ACAA determinó, en el ejercicio de su discreción, que no se debía expedir el auto, los demás jueces de la mayoría tienen el mismo derecho de emitir una orden de mostrar causa a la parte recurrida. Ahora bien, ninguna de estas actuaciones significa que la Juez Asociada Rodríguez Rodríguez esté prejuiciada a favor del recurrido, como tampoco la mayoría lo está en contra del señor Meléndez Rivera.

CC-2011-0137

Como es sabido, la normativa de la ética judicial establece claramente que el juez no debe entender en procedimiento judicial alguno en que tenga prejuicio o parcialidad **por haber prejuzgado el caso.**[3] Es evidente que la referida norma tiene como propósito salvaguardar la confianza de las personas en nuestro sistema de justicia. Cada persona que se acerque a los tribunales de Puerto Rico debe tener la confianza plena de que sus reclamaciones serán atendidas, sus derechos serán garantizados y la decisión que se tome será una objetiva, imparcial, y sobre todo justa, tal como lo exige el debido procedimiento de ley. Esta cláusula garantiza un tribunal justo e imparcial. La imparcialidad con la cual los casos deben ser juzgados es un requisito *sine qua non* de un sistema democrático.

No olvidemos, que la propia naturaleza de un foro colegiado impone a los jueces, de ordinario, unas limitaciones para asegurar que las decisiones reflejen el criterio mayoritario y estén basadas en el derecho aplicable y no en sus opiniones personales sobre los méritos de la controversia ante su consideración.[4]

Asimismo, debemos acotar que la facultad de disponer con carácter firme y final las controversias ante este Tribunal configura la imparcialidad del juzgador como exigencia del debido proceso de ley. Por ello, tal

---

[3] Canon 20 de los Cánones de Ética Judicial, 4 L.P.R.A. Ap. IV-B, C. 20.
[4] In re Colton Fontán, 141 D.P.R. 571 (1996).

CC-2011-0137

imperativo esta enraizado en valores de jerarquía constitucional.[5]

Ciertamente, el proceder enunciado en la disidencia – y no el seguido en la resolución de autos- es la que atenta contra el funcionamiento de este Tribunal como foro colegiado y el cauce adjudicativo. Es la disidencia en este caso, claro está, la que con su proceder apresurado asoma vestigios de la nefasta época del Medioevo. Aun así, debemos apuntalar que somos fieles defensores de nuestra responsabilidad constitucional y del derecho que tiene cada uno de mis compañeros a disentir cuando su conciencia lo dicte.


EDGARDO RIVERA GARCIA
JUEZ ASOCIADO

---

[5] Rivera Rodríguez v. Lee Stowell, 133 D.P.R. 881 (1993).