Voto particular disidente emitido por
la Juez Asociada Señora Rodríguez Rodríguez.
Discrepo de la determinación tomada por el Tribunal hoy en este caso. Considero que la decisión del Tribunal de Apelaciones es correcta y es lo que manda el estado de derecho vigente. A mi juicio, el procedimiento seguido en este caso por la Administración de Compensación por Acci-dentes de Automóoviles es insostenible y contrario a lo que ordena su propia reglamentación. Siendo así, debo ejercer hoy, como lo haré siempre, mi derecho a disentir. Lo con-trario sería abdicar a lo más preciado de un juez: su crite-rio propio y los designios de su conciencia.
Los hechos en este caso son sencillos y sobre lo fundamental, no hay controversia. Veamos.
*62 I
El demandante y recurrido, Ledo. Hiram Meléndez Rivera, fue Director Ejecutivo de la Administración de Com-pensación por Accidentes de Automóviles (ACAA) de enero de 2005 a enero 2009. El Sr. Julio Alicea Vasallo fue su sucesor y en la actualidad funge como tal. Luego del cese en funciones del licenciado Meléndez y haber sido nom-brado al puesto el señor Alicea Vasallo, la ACAA realizó una auditoría interna sobre una tarjeta de crédito expe-dida para el uso de la Oficina del Director Ejecutivo de la ACAA. La auditoría cubrió el periodo de tiempo durante el cual el licenciado Meléndez Rivera fue su director. Como resultado de la auditoría se hicieron ciertos hallazgos sobre un alegado mal uso de la tarjeta de crédito por el licenciado Meléndez. El informe preliminar como sus hallazgos no se discutieron con el licenciado Meléndez Rivera en ningún momento. La ACAA tampoco le entregó copia del informe.
El informe preparado por la Oficina de Auditoría de la ACAA se refirió al Departamento de Justicia quien, a su vez, lo remitió al Fiscal Especial Independiente. Éste de-signó un fiscal para evaluar el informe y actuar conforme determinara correcto.
Así las cosas, el licenciado Meléndez Rivera, amparán-dose en las disposiciones del “Manual de Políticas y Proce-dimientos del Departamento de Auditoría Interna” de junio de 2002 (“Manual”, “Manual de Auditoría” o “Reglamen-to”), acudió ante el Tribunal de Primera Instancia con un recurso de mandamus y solicitó que se le entregara copia del informe de auditoría preparado por la Oficina de Audi-toría de la ACAA. Indicó que el Manual de la agencia or-dena que los hallazgos de una auditoría se discutan con la parte afectada y manda que se le entregue a la parte audi-tada copia de los hallazgos y del informe preliminar que se prepare. En la solicitud de mandamus se incluyó como de- *63 mandados al actual director ejecutivo de la agencia, a la Sra. Zanarys Sullivan Cartagena, directora de la Oficina de Auditoría de la ACAA y a la propia agencia.
Los demandados, aquí peticionarios, alegaron ante el tribunal de instancia y luego en el Tribunal de Apelaciones, que no era necesario discutir el documento con el ex director ejecutivo de la agencia, porque ya éste no trabajaba para la ACAA. Además, indicaron que la ACAA remitió su informe con sus hallazgos al Departamento de Justicia y este, a su vez, hizo un referido a la Oficina del Fiscal Especial Independiente (FEI), quien está investigando los ha-llazgos del informe de auditoría. Por ello, y habida cuenta de que los documentos del FEI son confidenciales por dis-posición de su ley habilitadora, el tribunal no puede orde-nar su entrega al licenciado Meléndez. Por otro lado, plan-tearon que el FEI es parte indispensable en este caso y no fue demandado.
Luego de celebrar una vista argumentativa, el Tribunal de Primera Instancia dictó sentencia y concluyó que el FEI no podía catalogarse como parte indispensable en este caso, pues de lo que aquí se trataba era de si la ACAA cumplió con su reglamentación sobre los procesos que debe seguir para llevar a cabo una auditoría interna. En relación con esto último concluyó que la ACAA no cumplió con el procedimiento que establece su propia reglamentación por lo que le ordenó que le notificase al licenciado Meléndez copia del informe, así como que se le permitiera contestarlo. El tribunal le indicó a la ACAA que ésta debía cumplir con sus disposiciones reglamentarias.
Inconforme, la ACAA acudió al Tribunal de Apelaciones, quien confirmó el dictamen apelado. La ACAA acude ahora ante este Tribunal y presenta los mismos argumentos que los planteados ante los foros inferiores. Sorprendente-mente a mi juicio, la mayoría hoy ordena al recurrido que se exprese sobre el recurso presentado. Lo cierto es que la *64 norma aplicable a este caso es clara, por lo que considero que lo correcto en derecho era denegar el recurso traído ante nuestra consideración.
II
Los procesos de auditoría interna de la ACAA se rigen por un reglamento de la agencia, que se titula “Manual de Políticas y Procedimientos del Departamento de Auditoría Interna”, del Departamento de Auditoría Interna, de junio de 2002. El propósito del Manual es “provee[r] guías y es-tablecer los procedimientos y requisitos respecto a la orga-nización ejecución y administración”. Apéndice del certio-rari, págs. 38-64.
En el capítulo sobre las políticas de procedimiento, Ca-pítulo 200, en la parte que se relaciona con la “revisión, reconocimiento y respuesta a los Informes de Auditoría In-terna”, secs. 203.20-203.24, se dispone lo siguiente:
.20 Es la política de auditoría interna tratar de llegar a un acuerdo con el personal concernido en relación con la correc-ción de los hechos envueltos en los hallazgos de la auditoría, antes de la distribución del Informe Final. Cuando fuere nece-sario, la acción correctiva de tales hechos deberá ser estable-cida e incluida en el Informe. El equipo de auditores podría trabajar en conjunto con la unidad auditada para buscar jun-tos la menor solución a las deficiencias señaladas durante la auditoría.
.21 Para asegurarse de que tales acuerdos se logren en rela-ción con los hechos, los resultados a ser incluidos en el informe deberán ser discutidos con el jefe de la unidad auditada o con su representante, a quien se le suministrará una copia previa-mente a su distribución.
.22 Una vez el Director de Auditoría Interna considere que el informe de auditoría está conforme con las circunstancias, de-berá llevarse a cabo la distribución final del informe. Deberán ser entregadas copias del informe al personal de la unidad auditada. Si las respuestas (acción tomada o planificada y la fecha estimada de un su implementación) a las recomendacio-nes no han sido incluidas en el informe final, el Director tra-bajará con el jefe de la unidad auditada para llegar a una *65 respuesta adecuada a los puntos señalados en la auditoría. Estos planes de acción serán entregados a los recipiendarios originales del informe.
.23 El Director de Auditoría Interna es el responsable de eva-luar las respuestas de la unidad auditada. El Departamento de Auditoría Interna trabajará con la unidad auditada y con la alta gerencia para resolver cualquier respuesta que no sea adecuada.
.24 Los informes de auditoria [sic] son confidenciales y, por lo tanto, su distribución es limitada. No podrán ser reproducidos o entregados a otros sin el permiso específico del Director de Auditoría Interna. (Enfasis nuestro.) Apéndice del certiorari, págs. 44-45.
El Reglamento o Manual comienza señalando que la agencia ha de procurar “llegar a un acuerdo con el personal concernido en relación con la corrección de los hechos en-vueltos en los hallazgos de la auditoría, antes de la distri-bución del Informe Final”. Apéndice del certiorari, pág. 44. En otras palabras, el Manual de Auditoría indica clara-mente, desde su comienzo, que los hallazgos de una audi-toría deben compartirse con lo que llama “el personal concernido”. La labor conjunta entre la oficina de auditoría y la unidad auditada permite tomar de forma coordinada las medidas correctivas necesarias para atender los seña-lamientos hechos.
Específicamente, el reglamento ordena que “los resulta-dos a ser incluidos en el informe deberán ser discutidos con el jefe de la unidad auditada o con su representante, a quien se le suministrará una copia previamente a su distribución”. (Enfasis nuestro.) Apéndice del certiorari, pág. 44. Obsérvese que el lenguaje es mandatorio, no es optativo. Es evidente que esta es la mejor forma de lograr el objetivo de la auditoría interna de atender las deficien-cias directamente con la parte afectada para que se tomen las medidas correctivas que correspondan. No hay duda de que la discusión de unos hallazgos preliminares con la parte afectada le permite a ésta aclarar, objetar o comentar el hallazgo correspondiente previo a que se presente el in-forme final. El Manual también contempla que se incorpo- *66 ren al informe final, que rinda la oficina de auditoría in-terna, las respuestas ofrecidas por la parte afectada sobre los señalamientos hechos. Del Reglamento mencionado queda claro también que la parte afectada tiene el derecho no tan solo a recibir una copia del informe cuando esté en una fase preliminar, sino también cuando se emita de forma final.
En este caso no hay controversia de que al licenciado Meléndez Rivera, parte afectada por la auditoría, la ACAA no le notificó los resultados o hallazgos de su auditoría ni los discutió con él o le entregó copia del informe preparado. Es decir, en ningún momento la ACAA discutió con el licen-ciado Meléndez nada del contenido del informe realizado. Este, por lo tanto, no tuvo la oportunidad de examinar el informe para discutirlo, comentarlo o cuestionar su conte-nido, o impugnar los hechos en que se apoyan las conclusiones. El proceso seguido en la auditoría objeto de este caso se apartó por completo del procedimiento estable-cido por la propia agencia para estos propósitos.
En infinidad de ocasiones hemos indicado que una vez una agencia adopta normas y procedimientos para guiar sus procesos, estos obligan a su observancia y riguroso cumplimiento, pues esa regla o norma opera como límite al ejercicio de su discreción. Buono Correa v. Srio. de Rec. Naturales, 177 D.P.R. 415 (2009); Com. Vec. Pro-Mej., Inc. v. J.P., 147 D.P.R. 750, 764-765 (1999); T-Jac, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70, 81 (1999). En esto hemos sido enfáticos, en que una vez una agencia pro-mulga mía norma reglamentaria “debe cumplirla y apli-carla en la manera en que está concebida, sirviendo siem-pre a los propósitos, los objetivos y la política publica que la forjaron”. T-JAC, Inc. v. Caguas Centrum Limited, supra, pág. 81. La agencia no tiene discreción para determinar qué reglamento cumple o qué disposición reglamenta *67 ria puede obviar o ignorar. García Cabán v. U.P.R., 120 D.P.R. 167 (1987).
Permitir que una agencia administrativa haga caso omiso de la reglamentación que aprobó y actúe a su mar-gen, implica dotar a estos organismos con discreción ilimitada, lo cual hemos rechazado de forma consistente. Los entes administrativos no pueden actuar de manera arbitraria o caprichosa “al aplicar sus reglamentos a casos particulares ... se requiere que las decisiones administrativas sean consecuentes al aplicar los reglamentos”. Asoc. Fcias. Com. v. Depto. de Salud, 156 D.P.R. 105, 136-137 (2002). El ejercicio de poderes administrativos a base de conside-raciones caso por caso, no está permitido y es contrario a las normas más básicas de debido proceso de ley y el prin-cipio de que los procesos deben ser fundamentalmente jus-tos (fundamental fairness).
Es claro que el Reglamento de la ACAA que gobierna el proceso de auditoría interna exige que los hallazgos preli-minares se discutan con la parte afectada y se le entregue a esta agencia copia del informe preliminar. Es claro tam-bién que ello no ocurrió en este caso. Por lo tanto, la res-puesta obligada, pensaría yo, es evidente: que se ordene la entrega de copia del informe preliminar preparado. Eso fue precisamente lo que ocurrió en este caso. Solo de esta forma se cumple con el mandato constitucional de que las actuaciones de una agencia administrativas sean cónsonas con el debido proceso de ley. De lo contrario, estaríamos ante un procedimiento ajeno a nuestro derecho adminis-trativo donde se vulneran los principios más básicos del debido proceso de ley.
De otra parte, la forma más eficiente y eficaz de asegu-rarse de que un informe es imparcial es sin duda que el funcionario o exfuncionario de la unidad auditada revise los hallazgos que se le envían y someta sus comentarios, previo a que ese informe sea final o se actúe sobre él. El *68 procedimiento es justo solo si la parte afectada ha podido enfrentarse a los señalamientos que se le han hecho.(1)
El argumento de la parte peticionaria de que no tiene que discutir los resultados de su auditoría con el licenciado Meléndez, porque éste no es ya empleado de la agencia es, como poco, frívolo y no amerita una mayor discusión o consideración. Igualmente de improcedente son los argu-mentos sobre falta de parte indispensable y de confidencia-lidad del informe. El hecho de que el informe se le remi-tiese al Departamento de Justicia y luego al FEI, y que de esta forma suponemos y “por accesión” esté cubierto con el manto de confidencialidad de los expedientes del FEI, es igualmente equivocado. Aquí se ha solicitado copia de un informe que el reglamento que lo regula dice expresamente que la parte afectada tendrá derecho al acceso a ese docu-mento y a obtener copia. De eso trata esta controversia y es en virtud de ello que se solicita, y es en virtud de ello que hay que entregarlos.
El derecho aplicable, por lo menos hasta hoy, es claro. Es por ello que disiento.
Voto particular emitido por el Juez Asociado Señor Rivera García.
Nos sorprenden las expresiones vertidas por la Juez Asociada Señora Rodríguez Rodríguez en su voto particular disidente. Estas, aparte de ser en destiempo, constitu-yen un craso error que incide sobre la metodología adjudi-cativa que rige nuestro ordenamiento jurídico. Su *69 razonamiento, más bien, consiste en un ejercicio especula-tivo que pretende vaticinar, sobre la palestra de un vacío, la posición aún por conocer de este Tribunal. En vista de ello, nos vemos precisados a pronunciarnos con vehemen-cia ante el infausto análisis.
En primer lugar, aun cuando el mecanismo procesal de “orden de mostrar causa” se ha utilizado para advertir que prima facie el dictamen impugnado puede ser errado, ello no implica de forma alguna que su uso constituya “la ex-presión de un criterio firme y arraigado de que el dictamen recurrido es efectivamente erróneo”. (Enfasis suplido.) H. Sánchez Martínez, Práctica jurídica de Puerto Rico: derecho procesal apelativo, San Juan, Ed. LexisNexis, 2001, See. 3304, págs. 577-578. Al contrario, como bien señalamos en Pueblo v. Ruiz Negrón, 113 D.P.R. 17, 22 (1982), “el curso de acción intimado no es necesariamente el criterio del Tribunal”. En ese contexto, particularizamos que:
Durante varios años hemos estado utilizando como medio para agilizar los procedimientos ante este Tribunal, la expedi-ción de resoluciones que se [han dado a conocer como] órdenes para mostrar causa. Para evitar el trámite más complicado y largo de expedir un auto de revisión o de certiorari, en muchas ocasiones requerimos de la parte recurrida que muestre causa por la cual no debamos tomar determinado curso de acción. Lo hacemos cuando dicha parte no ha comparecido a oponerse a la petición, en ánimo de ofrecerle oportunidad de exponer ante nos los argumentos jurídicos que pueda tener contra los expre-sados en la petición(1) íd.
*70 Cónsono con lo anterior, el inciso (a) de la Regla 46 del Reglamento de este Tribunal, 4 L.P.R.A. Ap. XXI-A, provee para que esta Curia ordene a las partes mostrar causa por la cual no se deba expedir un auto y tomar determinado curso de acción. Ello no implica automáticamente —con-trario a lo sugerido por la Juez Asociada Señora Rodríguez Rodríguez— una inclinación invariable a revocar el dicta-men recurrido. Más bien, emitir una orden de mostrar causa pretende la ponderación detenida de los argumentos vertidos por todas las partes y no sólo los esbozados por la que comparece inicialmente ante este Foro.
Así, pues, una vez ante nos todos los planteamientos de las partes involucradas, el Tribunal —como ente colegia-do— podrá formar responsablemente su posición al respecto. Esa determinación, según claramente establecido en el inciso (c) de la Regla 46 de nuestro Reglamento, 4 L.P.R.A. Ap. XXI-A, podrá consistir en la denegación del recurso; la expedición del auto con el fin de revocar, modi-ficar o confirmar la sentencia o resolución recurrida; entre otras.
En segundo lugar, las implicaciones prácticas del voto particular disidente contradicen sus propios fundamentos. Por un lado, el referido voto pretende vindicar el debido proceso de ley del recurrido al argumentar que este es acreedor de determinados derechos como parte de un trá-mite administrativo. No obstante, sus expresiones —a la misma vez— le coartan el mismo derecho al peticionario. Ello, al adelantar su criterio sobre el asunto de autos, pri-vándole así al peticionario de su derecho a un juzgador imparcial que adjudique la controversia presentada sin una visión sesgada y desprovista de todos los argumentos pertinentes. Hernández v. Secretario, 164 D.P.R. 390, 395-396 (2005).
En fin, las expresiones contenidas en el voto disidente *71 no van más allá del plano de la especulación y tan solo pretende “adivinar” la decisión última que este Tribunal tomará en su día sobre el caso de autos. Al así actuar, in-curre en un grave desacierto al prejuzgar la controversia ante nos. Debo puntualizar que de la misma manera que la Juez Asociada Rodríguez Rodríguez al examinar la posi-ción de la ACAA determinó, en el ejercicio de su discreción, que no se debía expedir el auto, los demás Jueces de la mayoría tienen el mismo derecho de emitir una orden de mostrar causa a la parte recurrida. Ahora bien, ninguna de estas actuaciones significa que la Juez Asociada Rodríguez Rodríguez esté prejuiciada a favor del recurrido, como tam-poco la mayoría lo está contra el señor Meléndez Rivera.
Como es sabido, la normativa de la ética judicial esta-blece claramente que el juez no debe entender en procedi-miento judicial alguno en el que tenga prejuicio o parciali-dad por haber prejuzgado el caso.(2) Es evidente que esta norma tiene como propósito salvaguardar la confianza de las personas en nuestro sistema de justicia. Cada persona que se acerque a los tribunales de Puerto Rico debe tener la confianza plena de que sus reclamaciones serán atendi-das, sus derechos serán garantizados y la decisión que se tome será objetiva, imparcial y sobre todo justa, tal como lo exige el debido procedimiento de ley. Esta cláusula garan-tiza un tribunal justo e imparcial. La imparcialidad con la cual los casos deben ser juzgados es un requisito sine qua non de un sistema democrático.
No olvidemos que la propia naturaleza de un foro cole-giado impone a los jueces, de ordinario, unas limitaciones para asegurar que las decisiones reflejen el criterio mayo-ritario y estén fundamentadas en el derecho aplicable y no en sus opiniones personales sobre los méritos de la contro-versia ante su consideración.(3) Asimismo, debemos acotar que la facultad de disponer con carácter firme y final las *72 controversias ante este Tribunal configura la imparciali-dad del juzgador como exigencia del debido proceso de ley. Por ello, tal imperativo esta enraizado en valores de jerar-quía constitucional. (4)
Ciertamente, el proceder enunciado en la disidencia —y no el seguido en la resolución de autos— es la que atenta contra el funcionamiento de este Tribunal como foro cole-giado y el cauce adjudicativo. Es la disidencia en este caso, claro está, la que con su proceder apresurado asoma vesti-gios de la nefasta época del Medioevo. Aun así, debemos apuntalar que somos fieles defensores de nuestra respon-sabilidad constitucional y del derecho que tiene cada uno de mis compañeros a disentir cuando su conciencia lo dicte.

 La Administración de Compensación por Accidentes de Automóviles (ACAA) puede, evidentemente, remitir sus hallazgos finales a las agencias pertinentes. Pero eso es un proceso separado del asunto que hoy tratamos, que es si la ACAA actuó en este asunto al margen de su reglamento. Lo que sí debe quedar claro es que la ACAA no puede utilizar este hecho como subterfugio para incumplir con su propia reglamentación.

 En Pueblo v. Ruiz Negrón, 113 D.P.R. 17, 23-24 (1982), añadimos que:
“Mediante este procedimiento ha logrado este Tribunal que en muchos casos, recursos que de ordinario hubiesen tomado muchos meses en resolverse, se han podido resolver en pocas semanas. Este procedimiento de mostración de causa es parte de nuestro empeño de acortar y simplificar los trámites y lograr una pronta solución de los casos. Otros medios que hemos adoptado, tendientes al mismo fin, son, para ejemplos, dispensar el requisito de largas, costosas e innecesarias trans-cripciones, sustituyéndolas por exposiciones narrativas de la prueba; y resolver sin dilación, bajo la Regla 50 de nuestro Reglamento, casos que no ameritan ulteriores trámites. Este empeño está a tono con el deseo de todo litigante de que su caso se resuelva prontamente. En ello tiene particular interés la profesión jurídica en general. Valga aclarar que el empleo de estos medios para agilizar los procedimientos ante este Tribunal en ninguna forma menoscaba la preeminente función de hacer *70 justicia; al contrario, la complementa, pues justicia tardía no es necesariamente la mejor justicia.” (Énfasis suplido y escolios omitidos.)

 Canon 20 de Ética Judicial, 4 L.P.R.A. Ap. IV-B.

 In re Colton Fontán, 141 D.P.R. 571 (1996).

 Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881 (1993).